**PUBLISH**

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MIGUEL MORENO-TREVINO,

Defendant-Appellant.

No. 04-4144

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:04-CR-00051-DKW)**

---

Benjamin C. McMurray, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender and Scott Keith Wilson, Assistant Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Salt Lake City, Utah, for Defendant-Appellant.

Wayne T. Dance, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the briefs), Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **HENRY**, **HOLLOWAY**, and **O'BRIEN**, Circuit Judges.

---

**HENRY**, Circuit Judge.

---

Miguel Moreno-Trevino pleaded guilty to one count of illegal reentry after

deportation, in violation of 8 U.S.C. § 1326(a). At sentencing, the district court found that he accepted responsibility for his offense and decreased his offense level by two points under U.S.S.G. § 3E1.1(a). The government declined to file a motion for an additional one-point adjustment for acceptance of responsibility under Section 3E1.1(b). On appeal, Mr. Moreno-Trevino argues that (1) the district court erred in not reviewing the government's decision and not granting the third-level adjustment on its own; (2) the government breached the plea agreement by not seeking the additional adjustment; and (3) his sentence constituted plain error under *United States v. Booker*, 543 U.S. 220 (2005). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's sentence.[*]

## I. BACKGROUND

On February 4, 2004, Mr. Moreno-Trevino was indicted for one count of illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a). He pleaded guilty to the offense twenty-one days later. The plea agreement provided that "[i]f the government believes that I have clearly demonstrated acceptance of responsibility for my offense up to and including the time of sentencing, the

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* FED. R. APP. P. 34(a)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

government agrees to recommend that I receive the appropriate reduction for acceptance of responsibility as provided by U.S.S.G. § 3E1.1." Rec. vol. I, doc. 13, at 4.

The pre-sentence investigation report ("PSR") initially recommended an adjustment of three offense levels for acceptance of responsibility. The government objected, citing a PSR footnote in which Mr. Moreno-Trevino implied that he might breach his promise not to return to the United States. According to the PSR, when the probation officer reminded him that he could not re-enter the United States without the government's permission, Mr. Moreno-Trevino responded, "How else am I going to see my kids?" Rec. vol. IV, at 2 n.1. The government evidently assumed that the response implied future action. It objected to the PSR's recommended three-level adjustment on the grounds that "[Mr. Moreno-Trevino] stated to the Probation Officer that he intends to return to the United States after incarceration and removal, in direct violation of the plea agreement, the anticipated conditions of supervised release, and federal law." Rec. vol. I, doc. 14, at 2. The probation officer then revised the PSR to recommend only a two-level adjustment for acceptance of responsibility. Mr. Moreno-Trevino subsequently filed a motion seeking a third-level adjustment and a downward departure based on an over-representation of his criminal history. The government did not file a motion for the additional adjustment for acceptance

of responsibility.

At sentencing, the district court began with an offense level of eight and added a sixteen-level enhancement because Mr. Moreno-Trevino had been previously deported after conviction of a crime of violence. *See* U.S.S.G. § 2L1.2(a), (b)(1)(A). Over the government's objection, the district court awarded a two-level adjustment for acceptance of responsibility. It declined to grant a downward departure based on an over-representation of his criminal history and found that the "government was justified in not recommending the full three points for acceptance of responsibility." Rec. vol. III, at 15. With an offense level of twenty-two and criminal history category VI, the district court sentenced Mr. Moreno-Trevino to eighty-four months' imprisonment, at the bottom of the Guidelines range.

## II. ANALYSIS

On appeal, Mr. Moreno-Trevino contends that (1) the district court erred in not granting a three-level adjustment for acceptance of responsibility; (2) the prosecution breached the plea agreement by not seeking the one-point adjustment; and (3) the district court in sentencing committed plain error under *Booker*.

A.     Challenge to the two-level adjustment for acceptance of responsibility

Mr. Moreno-Trevino first challenges the district court's refusal to award him a three-level downward adjustment for acceptance of responsibility. He

bases his argument on Section 3E1.1 of the 2004 Sentencing Guidelines,[1] which

provides:

> (a)     If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
> (b)     If the defendant qualifies for a decrease under subsection (a) . . . and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Mr. Moreno-Trevino contends that once a district court finds a defendant's

acceptance of responsibility under subsection (a), the government's discretion to

file a motion under subsection (b) is limited to a determination of whether his

acceptance was timely. *See* U.S.S.G. § 3E1.1 n.5 ("The sentencing judge is in a

unique position to evaluate a defendant's acceptance of responsibility."). He

maintains that his plea was timely because he pleaded guilty three weeks after the

indictment. Finally, Mr. Moreno-Trevino argues that the district court should

have required the government to file a Section 3E1.1(b) motion because the

government had no rational basis not to do so. Mr. Moreno-Trevino's arguments

---

[1] The PROTECT Act of 2003 amended Section 3E1.1(b) to require a government motion for a defendant to receive the third-level adjustment for acceptance of responsibility. We apply the amended version. *See* U.S.S.G. § 1B1.11(a), (b) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced" unless such use would violate the Ex Post Facto Clause.).

require us to consider the standards regarding the government's refusal to file a motion under Section 3E1.1, and we examine this question of law de novo. *See United States v. Duncan*, 242 F.3d 940, 945 (10th Cir. 2001) (reviewing de novo the standards concerning the government's refusal to file a Section 5K1.1 motion).

In response, the government principally argues that its discretion to file a Section 3E1.1(b) motion is not limited by the timeliness of a defendant's acceptance of responsibility. According to the government, the discretion that it is afforded to file an acceptance-of-responsibility motion is similar to the discretion to file other motions, notably substantial-assistance motions under Section 5K1.1. Mr. Moreno-Trevino agrees that "[t]he most analogous situation [to the government's discretion under Section 3E1.1] is the prosecutorial discretion embodied in § 5K1.1 substantial assistance motions." Aplt's Br. at 16.

Section 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Importantly, a prosecutor's discretion as to Section 5K1.1 motions is not unlimited. "[F]ederal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal [(a)] was based on an unconstitutional motive"

or (b) "was not rationally related to any legitimate Government end." *Wade v. United States*, 504 U.S. 181, 185-86 (1999); *see also Duncan*, 242 F.3d at 948 n.11 (rejecting the Eighth Circuit's approach "prohibit[ing] the government from basing its decision whether to file a substantial-assistance motion 'on factors other than the substantial assistance provided by the defendant'") (quoting *United States v. Anzalone*, 148 F.3d 940, 941 (8th Cir.), *vacated & reh'g en banc granted*, 148 F.3d 940 (8th Cir.), *reinstated & reh'g en banc denied*, 161 F.3d 1125 (8th Cir. 1998)).

Unlike Section 5K1.1, few courts have considered the government's discretion to file a Section 3E1.1(b) motion after the PROTECT Act amendment. The Eighth Circuit concluded that "the Government's failure to file a § 3E1.1(b) motion must be rationally related to a legitimate governmental end." *United States v. Smith*, 422 F.3d 715, 726 (8th Cir. 2005). The Sixth Circuit recently stated that a pre-*Booker* defendant "was not entitled to a remedy [under Section 3E1.1(b)] unless the claim alleged that the prosecutor's decision not to bring a motion was based on a constitutionally impermissible motive such as race or religion." *United States v. Smith*, 429 F.3d 620, 628 (6th Cir. 2005). *See also* Margareth Etienne, *Acceptance of Responsibility and Plea Bargaining Under the Feeney Amendment*, 16 FED. SENT. R. 109, 112 (2003) ("Unless a prosecutor bases her decision on a constitutionally impermissible reason such as race, gender or

religion, a party may not look behind the government's failure to make the motion for a substantial assistance departure. It is likely that the government's failure to make a motion for the third point for acceptance of responsibility will be similarly treated.").

For several reasons, we conclude that prosecutors should be afforded the same discretion to file acceptance-of-responsibility motions under Section 3E1.1(b) as substantial-assistance motions under Section 5K1.1. First, the text of Section 3E1.1(b) and its accompanying commentary indicate that prosecutors have considerable discretion to file a motion. The language in the amended Section 3E1.1 resembles the language found in Section 5K1.1; under both sections, a defendant can obtain an additional adjustment only "upon motion of the government." More specifically, a Section 3E1.1(b) motion must state that a defendant's timely notification of pleading guilty "permitt[ed] the government to avoid preparing for trial and permitt[ed] the government and the court to allocate their resources efficiently." The recent amendment also added an Application Note stating that "the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial." U.S.S.G. § 3E1.1 cmt. n.6. Thus, the government "define[s] what constitutes timeliness and what constitutes trial preparation, [and] once those terms are defined the government has an evidentiary advantage." Etienne, *supra*, at 112.

Second, like Section 5K1.1, we read Section 3E1.1(b) to confer on the government "a power, not a duty," *Wade*, 504 U.S. at 185, to file a motion when a defendant has timely notified prosecutors of an intention to plead guilty. *See also Wayte v. United States*, 470 U.S. 598, 607 (1985) (generally describing the government's "broad discretion" about whom to prosecute because such decisions are "particularly ill-suited to judicial review"). The language of Section 3E1.1(b) is not rendered superfluous if the government can refuse to file such a motion for reasons other than timeliness. That conclusion is supported by the Supreme Court's decision in *Wade*. There, the Court held that "although a showing of assistance is a necessary condition of relief [under Section 5K1.1], it is not a sufficient one." 504 U.S. at 187; *see also Duncan*, 242 F.3d at 946 ("[T]he Court reiterated three times the rule that substantial assistance, standing alone, does not entitle a defendant to a substantial assistance motion."). We similarly conclude that, while a defendant must "timely notify[] authorities of his intention to enter a plea of guilty" to warrant a Section 3E1.1(b) motion, such timeliness does not automatically entitle him to the government's filing for the additional adjustment.

Significantly, despite the government's "broad discretion" to file a Section 3E1.1 motion, such discretion "is not unfettered." *See Wayte*, 470 U.S. at 608 (internal quotation marks omitted). We conclude that the same limited authority is available to review the government's decision not to file a Section 3E1.1

-9-

motion as is available to challenge similar decisions under Section 5K1.1: a court can review the government's refusal to file a Section 3E1.1(b) motion and grant a remedy if it finds the refusal was "(1) animated by an unconstitutional motive, or (2) not rationally related to a legitimate government end." *Duncan*, 242 F.3d at 947.

Neither circumstance is present here. Mr. Moreno-Trevino does not contend that the government refused to file the motion because of an unconstitutional motive. Moreover, as to the second basis for judicial review, the government advances a rational justification for its decision not to file a 3E1.1(b) motion. The government plausibly interpreted Mr. Moreno-Trevino's statement during the pre-sentence investigation as suggesting that he intended to return to the United States to see his children. In light of his agreement "to remain outside the United States unless given the express permission" by the government to reenter, Rec. vol. I, doc. 13, at 5 ¶ 12(c)(3), the government reasonably found his intent to be "flagrantly disrespectful of the law" and "totally inconsistent with acceptance of responsibility." Rec. vol. I, doc. 14, at 2.

Accordingly, the government's refusal to file a Section 3E1.1(b) motion is supported by its legitimate interest in "reinforcing the principle within the criminal community," *Duncan*, 242 F.3d at 949, that prosecutors will file acceptance-of-responsibility motions only for defendants who fully cooperate and

intend to abide by their plea agreements, supervised release conditions, and federal law relating to their offenses of conviction. *Cf. United States v. Wilson*, 390 F.3d 1003, 1010 (7th Cir. 2004) (concluding that "the government's attempt to block [the defendant] from pursuing his unrelated . . . civil suit [by refusing to file a Section 5K1.1 motion] is so far afield from the purpose of § 5K1.1 . . . as to be irrational"). Thus, we have no authority to review the government's refusal to file a Section 3E1.1 motion and to grant a remedy for Mr. Moreno-Trevino.

B.      Alleged breach of the plea agreement

Mr. Moreno-Trevino's plea agreement stated that "[i]f the government believes that I have clearly demonstrated acceptance of responsibility for my offense up to and including the time of the sentencing, the government agrees to recommend that I receive the appropriate reduction for acceptance of responsibility as provided by U.S.S.G. § 3E1.1." Rec. vol. I, doc. 13, at 4. Mr. Moreno-Trevino contends on appeal that the government's refusal to file a Section 3E1.1(b) motion breached the plea agreement. We "use[] a two-step analysis to determine whether the United States violated a plea agreement: the sentencing court should (1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea." *United States v. Guzman*, 318 F.3d 1191, 1195-96

(10th Cir. 2003). We review de novo "[a] claim that the government has breached a plea agreement." *United States v. Werner*, 317 F.3d 1168, 1169 (10th Cir. 2003).

As to the first step, Mr. Moreno-Trevino's plea agreement required the government to recommend an "appropriate" adjustment based on what it "believe[d]" about his acceptance of responsibility at sentencing. The government did not believe, based on his response to the probation officer, that he warranted any adjustment for acceptance of responsibility; it opposed the two-level adjustment at sentencing and refused to file a Section 3E1.1(b) motion.

Moreover, the plea agreement contained no commitment that the government would file a motion for an additional adjustment. As the district court noted at sentencing, "there's nothing said [in the plea agreement] about the government making a motion, it's just flat out in the Plea Agreement that if he fulfills the requirements of acceptance of responsibility, that the government will recommend three or two, as the case may be." Rec. vol. III, at 12. In light of the plea agreement's terms, Mr. Moreno-Trevino lacked reasonable grounds for believing that the government would seek a three-level adjustment in his offense level. Therefore, the government did not breach the plea agreement by declining to file a motion under Section 3E1.1(b).

C. *Booker* challenge

-12-

The district court sentenced Mr. Moreno-Trevino to eighty-four months' imprisonment, at the bottom of the Guidelines range. In supplemental briefing, he contends that his sentence violates the Supreme Court's decision in *Booker*. Mr. Moreno-Trevino presents a *Booker* claim of non-constitutional error, as the sentencing court "err[ed] by applying the Guidelines in a mandatory fashion, as opposed to a discretionary fashion." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (en banc); *cf. id.* at 731 (describing "constitutional *Booker* error" as a court's reliance "upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily"). Because he did not object to the mandatory application of the Guidelines during sentencing, we review this decision for plain error. *Id.* at 732.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation marks omitted). In light of *Booker*, the first two prongs of our plain error analysis are met. The district court committed a non-constitutional error when it applied the Guidelines in a mandatory fashion, and the error is plain. *Id.*

Under the third prong of plain error review, "the defendant rather than the [g]overnment" "bears the burden of persuasion with respect to prejudice." *United States v. Olano*, 507 U.S. 725, 734 (1993). The defendant must show "a

-13-

reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (quotation marks and alteration omitted).

Here, Mr. Moreno-Trevino presents two arguments to satisfy the third prong. First, he contends that *Booker* error is structural error. We clearly rejected that argument in *Gonzalez-Huerta*: "non-constitutional *Booker* error does not constitute structural error." 403 F.3d at 734. Second, Mr. Moreno-Trevino cites *United States v. Labastida-Segura*, 396 F.3d 1140, 1143 (10th Cir. 2005), a case of non-constitutional *Booker* error in which the defendant was also sentenced at the low end of the Guidelines range. However, that case is inapposite. There, the defendant challenged the Guidelines in the district court proceedings, and we remanded for resentencing because the government had failed to establish that the error was harmless. Thus, *Labistida-Segura* did not involve plain error review.

Nevertheless, "[w]e need not determine whether Mr. [Moreno-Trevino] can satisfy this burden because even if he were to meet the third prong, he must also satisfy the fourth prong to obtain relief." *Gonzalez-Huerta*, 403 F.3d at 736. "Under the fourth prong of plain-error review, a court may exercise its discretion to notice a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

As to the fourth prong, Mr. Moreno-Trevino presents no arguments as to

the unfairness of his specific sentence; rather, he contends generally that "mandatory application of the guidelines without consideration of the other factors in [18 U.S.C.] § 3553 undermines the integrity and fairness of the federal court system." Aplt's Supp. Opening Br. at 12. Mr. Moreno-Trevino has not satisfied his burden. He has not demonstrated that his sentencing error is "particularly egregious" and would result in a "miscarriage of justice" if uncorrected. *Gonzalez-Huerta*, 403 F.3d at 736. "[A] generalized assertion of error anchored solely to . . . mandatory application of the Guidelines does not meet [the fourth prong's] standard." *United States v. Dowlin*, 408 F.3d 647, 671-72 (10th Cir. 2005).

Moreover, the record reflects no evidence "that the district court would likely impose a significantly lighter sentence on remand." *Id.* at 671. Instead, the district court suggested that it sentenced Mr. Moreno-Trevino at the low end of the Guidelines range because he was facing prosecution and sentencing on a new criminal charge for assaulting a deputy sheriff. *See* Rec. vol. III, at 13 ("I'm not going to waive on [Mr. Moreno-Trevino], as bad as some of the things he's done. I'm going to go at the bottom of the guidelines in this case, and having in mind this other case [i.e., assault of an officer] is coming up.").

Thus, the district court did not commit plain error in applying the mandatory Guidelines.

## III. CONCLUSION

Accordingly, we AFFIRM the district court's sentence.