**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

JUAN ESPINOZA-CANO,
            *Defendant-Appellant.*

No. 05-10339

D.C. No.
CR-04-0379 SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Y. Illston, District Judge, Presiding

Argued and Submitted
April 7, 2006—San Francisco, California

Filed August 8, 2006

Before: David R. Thompson and Consuelo M. Callahan,
Circuit Judges, and Jeffrey T. Miller,* District Judge.

Opinion by Judge Miller

*The Honorable Jeffrey T. Miller, United States District Judge for the
Southern District of California, sitting by designation.

## COUNSEL

Josh Cohen, Assistant Federal Public Defender, San Francisco, California, for the defendant-appellant.

Robert David Rees, Assistant United States Attorney, San Francisco, California, for the plaintiff-appellee.

## OPINION

MILLER, District Judge:

Defendant Juan Espinoza-Cano appeals his conviction and sentence in the district court for illegal re-entry into the United States following deportation, in violation of 8 U.S.C. § 1326(b). This appeal requires us to address two provisions of the advisory U.S. Sentencing Guidelines ("Guidelines"). Under section 2L1.2(b)(1)(C) of the Guidelines, the district court, when calculating the Guideline range for a § 1326 conviction, must enhance the defendant's offense level if the defendant was convicted of an aggravated felony prior to the deportation. We examine whether the district court, in determining if a prior conviction qualifies as an aggravated felony, may properly consider, in light of *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), a police report that has been incorporated by reference into the criminal complaint underlying the prior conviction and that recites a mutually agreed-upon statement of facts. We also address for the first time the standard of review a district court must apply to a prosecutor's decision not to file a motion pursuant to section 3E1.1(b) of the Guidelines requesting that the defendant receive a third level reduction for acceptance of responsibility.[1] These are important considerations because, as

---

[1]Section 3E1.1 provides:

   (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.

   (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

U.S. Sentencing Guidelines Manual § 3E1.1 (2004).

we have already said, the Guidelines are the "starting point" for a district court in determining what constitutes a fair, just, and reasonable sentence. *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006).

We affirm the district court's finding that Espinoza-Cano's prior conviction was a prior aggravated felony. In so doing, we approve of the district court's consideration of a police report incorporated into a criminal complaint in making that finding. We also hold that the proper standard for a district court's review of a prosecutor's decision not to file a motion under section 3E1.1(b) is the same standard for review of a decision to file a substantial assistance motion under section 5K1.1 of the Guidelines: The government may not refuse to file a motion on the basis of an unconstitutional motive or for reasons not rationally related to a legitimate government interest.[2]

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Espinoza-Cano, a citizen of Mexico, was residing in the United States. On May 30, 2002, he and an accomplice were arrested for stealing several items, totaling more than $400, from an Albertson's grocery store in Mountain View, California. The police report from the incident was attached to, and incorporated by reference into, the criminal complaint as the statement of probable cause. Espinoza-Cano pleaded guilty to grand theft, in violation of §§ 484-487(a) of the California Penal Code. At the taking of his plea, counsel stipulated that there was a factual basis for the plea as set forth in the police report. Espinoza-Cano was sentenced to twelve months imprisonment and, on February 6, 2003, was deported to Mexico.

---

[2]Section 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S. Sentencing Guidelines Manual § 5K1.1 (2004).

Following his deportation, Espinoza-Cano re-entered the United States and, again, was arrested for grand theft. Federal agents were notified of his unlawful presence and, on November 17, 2004, a grand jury indicted Espinoza-Cano on the charge that he was a previously deported alien found in the United States, in violation of 8 U.S.C. § 1326.

Espinoza-Cano filed a motion to dismiss the indictment. He argued that the indictment was fatally flawed under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001), because his prior deportation had not been determined by a jury and because the indictment failed to allege a prior aggravated felony. Although Espinoza-Cano recognized that, under *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the prior aggravated felony conviction did not constitute an essential element under § 1326, he raised the issue to preserve it for appellate review.

The district court denied the motion to dismiss the indictment and set a trial date. Shortly thereafter, counsel for Espinoza-Cano informed the government that Espinoza-Cano wished to enter a conditional guilty plea, pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, in order to retain his right to appeal the district court's denial of his motion to dismiss the indictment. The government refused to consent to the conditional plea, asserting that it believed a conditional plea "was not appropriate in these circumstances." Presumably to achieve the same result as a conditional plea, Espinoza-Cano notified the government that he waived his right to a trial by jury and would stipulate to all facts necessary to establish his guilt at a bench trial. The district court, describing the bench trial as a "semi-modified Rule 11 colloquy" or "slow plea," found Espinoza-Cano guilty.

The Presentence Report ("PSR") recommended a thirty-seven-month custodial sentence. The calculation was predi-

cated on a base offense level of eight (section 2L1.2(a)), with an upward adjustment of eight levels because Espinoza-Cano had been previously deported after a conviction for an aggravated felony (section 2L1.2(b)(1)(C)), and a downward adjustment of two levels for acceptance of responsibility (section 3E1.1), for a total offense level of fourteen. The PSR recommended that, in the absence of a motion from the government, and because Espinoza-Cano put the government to its burden of proof at a stipulated bench trial, Espinoza-Cano should not be awarded a third level reduction for acceptance of responsibility under subsection (b) of section 3E1.1. The PSR also calculated Espinoza-Cano's criminal history to be a category VI, which, when combined with a total offense level of fourteen, yielded a Guideline range of thirty-seven to forty-six months.

Espinoza-Cano objected to the recommended Guideline range in the PSR, arguing that he had not been convicted of an aggravated felony, and, therefore, should not have been given the eight point increase in his offense level. He also argued that he was entitled to an additional reduction in his offense level for acceptance of responsibility under section 3E1.1(b), notwithstanding the decision of the government not to file a motion. The district court overruled Espinoza-Cano's objections and sentenced him to thirty-seven months' imprisonment.

On appeal, Espinoza-Cano argues that (1) the government failed to plead and prove the existence of an aggravated felony; (2) judicially noticeable documents did not establish that his prior conviction was, in fact, an aggravated felony under the modified categorical approach of *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); and (3) the district court erred in not reducing his offense level by an additional level for acceptance of responsibility based on his having timely notified authorities of his intent to plead guilty.

## II.  STANDARD OF REVIEW

Whether a prior conviction qualifies as an aggravated felony under the Guidelines is a question of law reviewed de novo. *United States v. Hernandez-Valdovinos*, 352 F.3d 1243, 1246 (9th Cir. 2003). A district court's decision whether to reduce a defendant's sentence for acceptance of responsibility is reviewed for clear error. *United States v. Cortes*, 299 F.3d 1030, 1037 (9th Cir. 2002). "[W]hether the district court misapprehended the law with respect to the acceptance of responsibility reduction" is reviewed de novo. *Id*. The district court's denial of a motion to dismiss an indictment for failure to plead an essential element of an offense is reviewed de novo. *See United States v. Pernillo-Fuentes*, 252 F.3d 1030, 1032 (9th Cir. 2001).

## III.  ANALYSIS

### A.  Pleading an Aggravated Felony in the Indictment

[1] Espinoza-Cano argues that the fact of his prior conviction for an aggravated felony must have been pled in the indictment and proven to a jury beyond a reasonable doubt. This argument is foreclosed by *Almendarez-Torres*, 523 U.S. 224, 118 S.Ct. 1219, which remains binding precedent on this court. *United States v. Weiland*, 420 F.3d 1062, 1079, n.16 (9th Cir. 2005); *United States v. Quintana-Quintana*, 383 F.3d 1052, 1053 (9th Cir. 2004); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 412 (9th Cir. 2000).

### B.  The Prior Felony Conviction

[2] Pursuant to section 2L1.2(b)(1)(C) of the Guidelines, the offense level for a defendant convicted of a violation of 8 U.S.C. § 1326 is increased by eight levels if the defendant was deported after being convicted of an aggravated felony.[3]

---

[3]In this case, the prior conviction is not for a more serious felony which, under section 2L1.2(b)(1)(A) or (B), would result in an increase in the offense level by sixteen or twelve, respectively. U.S. Sentencing Guidelines Manual § 2L.1.2(b)(1) (2004).

The question is whether Espinoza-Cano's conviction for grand theft under § 487(a) of the California Penal Code qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(G), which classifies a theft offense for which the term of imprisonment is at least one year as an aggravated felony.

There exist two approaches to determine whether a prior conviction is an aggravated felony, the "categorical approach" and the "modified categorical approach," both of which were sanctioned in *Taylor*. *Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160. An analysis of Espinoza-Cano's prior conviction leads us to conclude, and the parties agree, that it does not qualify as an aggravated felony under the categorical approach.

**[3]** Under the categorical approach, "federal courts do not examine the facts underlying the prior offense, but 'look only to the fact of conviction and the statutory definition of the prior offense' " and compare it to the generic definition of the offense. *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc) (quoting *Taylor*, 495 U.S. at 602, 110 S.Ct. at 2143); *see also Taylor*, 495 U.S. at 598, 110 S.Ct. at 2158 (concluding that Congress meant to import the generic definitions of offenses into sentencing enhancement statutes). The generic definition of a theft offense for purposes of § 1101(a)(43)(G) is "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Corona-Sanchez*, 291 F.3d at 1205 (quoting *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001)). Because California's theft statute criminalizes more than just the taking of property, Espinoza-Cano's prior conviction for grand theft is not categorically a conviction for an aggravated felony. *See* Cal. Penal Code § 487(a) (defining grand theft as "[w]hen the money, *labor*, or real or personal property taken is of a value exceeding four hundred dollars" (emphasis added)); *cf. Corona-Sanchez*, 291 F.3d at 1208 (observing that whereas the federal definition of theft criminalizes only the taking of

property, California's general theft statute, § 484(a) of the California Penal Code, criminalizes theft of labor and solicitation of false credit reporting).

**[4]** Accordingly, we apply the modified categorical approach, which allows the court to consult limited categories of documents to determine whether the facts underlying the conviction necessarily establish that the defendant committed the generic offense. *Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160. Toward that end, the sentencing court may look to statutory elements, charging documents, and jury instructions to determine whether an earlier conviction was for a generic offense. *Id.* In this circuit, when the conviction in question is based on a guilty plea, we have approved the sentencing court's consideration of "the charging documents in conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the defendant pled guilty to the elements of the generic crime." *Corona-Sanchez*, 291 F.3d at 1211 (citing *United States v. Bonat*, 106 F.3d 1472, 1476-78 (9th Cir. 1997)).

**[5]** The question we now address is, under a modified categorical approach, what consideration, if any, may a sentencing court give to a police report that is incorporated into a complaint which, in turn, constitutes the basis for a guilty plea and, hence, the prior conviction? The starting point for our analysis is *Shepard v. United States* because it addresses the question of whether a sentencing court may look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and was the basis for, a predicate conviction for an enhanced sentence. *Shepard*, 544 U.S. 13, 125 S.Ct. 1254. The government argued in *Shepard* that a sentencing court may properly consider police reports and complaint applications in determining whether a felon has sustained predicate convictions for violent felonies or drug offenses for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e) (2000 ed. and Supp. II). *Shepard*, 544 U.S. at 21, 125 S.Ct. at 1260. The *Shepard* Court characterized the

government's position as an effort to create "a wider evidentiary cast . . . going beyond conclusive records made or used in adjudicating guilt and looking to documents submitted to lower courts even prior to charges," *id.*, and rejected the government's "call to ease away from the *Taylor* [holding]." *Id.* at 23. In so doing, the Court observed that "*Taylor* is clear that any enquiry beyond statute and charging document must be narrowly restricted to implement the object of the statute and avoid evidentiary disputes." *Id.* at 23 n.4. In essence, *Shepard* rejected the contention that the police report could be consulted because it was "sufficiently reliable" and the defendant had never disputed its accuracy. *Id.* at 18-19. The Court declared that under a nongeneric statute, certainty that the defendant had pleaded guilty to the generic offense may come from either (1) "a charging document that narrows the charge to generic limits," or (2) "the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea."[4] *Id.* at 25.

*Shepard*, in essence, affirms our holdings that allow the district court in a modified categorical analysis to consider the charging document, plea agreement, and plea colloquy. For example, in *Hernandez-Valdovinos*, 352 F.3d at 1248, we upheld the district court's examination of the indictment, plea agreement, minutes from the change of plea hearing, and the judgment. *See also Bonat*, 106 F.3d at 1476-77 (allowing the district court to consider the information, the judgment, and the plea transcript); *United States v. Sweeten*, 933 F.2d 765, 768-70 (9th Cir. 1991) (allowing the district court to consider the indictment, signed plea agreement, and judgment).

**[6]** In this case, the police report falls squarely into the cat-

---

[4]Because the charging documents, the defendant's admissions, and the findings of fact are documents that provide certainty, the Court's use of these documents to determine whether an offense is an aggravated felony did not raise concerns under *Apprendi* for a plurality of the Court. *Shepard*, 544 U.S. at 24, 125 S. Ct. at 1262.

egory of documents that are proper for judicial consideration as articulated by *Taylor* and *Shepard*. Here, the police report was incorporated by reference into the charging document, a formal complaint, thereby becoming part of the complaint and narrowing the factual basis for the charge. In addition, Espinoza-Cano, through counsel, admitted in open court that the facts in the police report constituted the factual basis underlying his guilty plea.[5] This admission was the functional equivalent of what occurred in *United States v. Hernandez-Hernandez*, 431 F.3d 1212 (9th Cir. 2005), in which we held that a defendant's assent to the statement of facts in a motion under California Penal Code § 995 to set aside the indictment or information was a proper basis for a sentencing court to engage in a modified categorical analysis. *Id.* at 1218. For the same reason, the police report as it was utilized in the present case became a "mutually agreed-upon statement of facts" within the meaning of *United States v. Almazan-Becerra*, No. 05-10056, ___ F.3d ___ (9th Cir. 2006).[6] The district court's

_____

[5]The relevant portion of the plea colloquy is as follows:

THE COURT: Will all counsel stipulate there is a factual basis for the plea entered by each of their clients based upon police reports contained in the Court's file. Mr. Sharkey?

MR. SHARKEY [Counsel for Espinoza-Cano]: So stipulated, your Honor.

. . .

THE COURT: All right. . . . [T]he Court finds that there is a factual basis for each of the pleas entered by each defendant and the Court accepts those pleas.

[6]In this way, the police report at issue is unlike the police report in *Almazan-Becerra*. Both Espinoza-Cano and the State agreed that the police report contained the facts of his offense, rendering the document the factual basis of his plea agreement. *See Hernandez-Hernandez*, 431 F.3d at 1218 (finding "no appreciable difference between allowing the district court to rely on [a] stipulated 995 Motion which served as the factual basis for the plea and allowing prior sentencing courts to rely on a plea agreement or the transcript of a plea colloquy"). Whereas it was unclear in *Almazan-Becerra* which part of the defendant's plea the police report was

consideration of the police report did not widen the evidentiary net. Rather, the police report became part and parcel of the complaint and formed the agreed upon factual basis for the plea. Thus, the underlying record of Espinoza-Cano's prior conviction was not expanded beyond that which *Taylor* and *Shepard* approved for a modified categorical analysis. Moreover, the manner in which the police report was utilized, to both define the charge and provide the factual basis for Espinoza-Cano's guilty plea, eliminated any need for resolution of evidentiary disputes or judicial fact-finding. *See Hernandez-Hernandez*, 431 F.3d at 1218. Under these circumstances, we hold that it was proper for the district court to consider the police report in determining whether Espinoza-Cano had suffered a prior aggravated felony conviction.

[7] Turning to Espinoza-Cano's prior conviction, it is clear that it meets the generic definition of a theft offense. It is plain from the criminal complaint, as well as from the transcript of the plea colloquy, that Espinoza-Cano was charged with, and convicted of, taking personal property with a value in excess of $400.[7] The parties do not dispute that the facts in the police report are sufficient to show that Espinoza-Cano had the requisite intent to deprive the owner of ownership.[8]

---

meant to support because the defendant pled in the disjunctive that he did "*either* transport *or* sell *or* offer to sell marijuana," *Almazan-Becerra*, No. 05-10056, __ F.3d __, slip op. at 8545 (emphasis in original), here the police report narrowed the offense to a generic theft offense, precluding any possibility that Espinoza-Cano was convicted of a non-generic theft offense within California Penal Code §§ 484-487.

[7]Count 1 of the criminal complaint alleged that Espinoza-Cano, in violation of California Penal Code §§ 484-487(a) "did unlawfully take personal property, merchandise, of a value exceeding four hundred dollars ($400.00), the property of Albertson's." During the plea colloquy, Espinoza-Cano pleaded guilty to "grand theft of personal property of a value of over $400 in violation of Penal Code Section 484 to 487."

[8]According to the report, Espinoza-Cano and his co-defendant entered an Albertson's grocery store. They placed several items in a shopping cart,

Because these facts also foreclose the possibility that he was convicted on an aiding and abetting theory, we need not consider Espinoza-Cano's additional argument which is predicated on that alleged possibility.

## C.   Acceptance of Responsibility

Under the Guidelines, a defendant who "clearly demonstrates acceptance of responsibility for his offense" is entitled to a two-level reduction in offense level. U.S. Sentencing Guidelines Manual § 3E1.1(a) (2004). The question presented in this case is whether Espinoza-Cano should have received a third level reduction in offense level under section 3E1.1(b) for acceptance of responsibility at his sentencing.[9]

[8] Before April 2003, a defendant could receive a third level reduction either for providing information to the government regarding his own involvement or by timely notifying the government of his intent to plead guilty. *Id.* Under the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, § 401(g), 117 Stat. 650, 671-72 (2003), a defendant is eligible for a third level reduction only upon a motion by the government stating that "the defendant has assisted authorities" by "timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial."[10] PROTECT Act,

---

but concealed other items under their shirts. The total value of the items (including over $250 in liquor) was approximately $600. When store security attempted to question him, Espinoza-Cano dropped the items and ran from the store. An off-duty officer chased Espinoza-Cano and placed him under arrest. Under these facts Espinoza-Cano's intent to deprive Albertson's of over $400 worth of merchandise was established.

[9]Because the parties neither raise nor dispute the question of whether Espinoza-Cano was entitled to the two-level reduction under section 3E1.1(a), we do not address the propriety of the two-level reduction.

[10]Although the Guidelines are advisory after *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) — and were advi-

§ 401(g). "Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparing for trial, an adjustment under subsection (b) may *only* be granted upon a formal motion by the Government at the time of sentencing." U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.6 (2004) (citing PROTECT Act, § 401(g)(2)(B)) (emphasis added).

Espinoza-Cano contends that he was entitled to the third level reduction for acceptance of responsibility because, under section 3E1.1, he was willing to stipulate to all the facts necessary for him to be found guilty, thereby allowing the government to avoid trial preparation. Espinoza-Cano further contends that the government arbitrarily decided not to make the requisite motion for a third point reduction, thereby penalizing him for asserting his constitutional rights. Finally, Espinoza-Cano argues that the district court erred in not applying any level of review to the government's decision not to request the third point reduction, and urges us to adopt a standard which the district court, upon remand, may apply in this case.

The government responds that under our decision in *United States v. Villasenor-Cesar*, 114 F.3d 970 (9th Cir. 1997), Espinoza-Cano was not eligible for the third point because he proceeded by way of a stipulated bench trial. The government further argues that by going to trial, Espinoza-Cano caused the government to allocate additional resources to anticipate and defend a complete appeal, and, therefore, he is not enti-

---

sory at the time of Espinoza-Cano's sentencing in May 2005 — sentencing courts are still bound to consult them as one of many factors in a sentencing analysis and they are a "starting point" for that analysis. *Cantrell*, 433 F.3d at 1280. More importantly, the prerequisite in subsection (b) of section 3E1.1 is a statutory requirement that the district court must apply in its calculations under the Guidelines, regardless of the advisory nature of the Guidelines post-*Booker*. *See, e.g.*, *United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005) (noting that *Booker* does not bear on statutory mandatory minimum sentences).

tled to an adjustment for allowing the government to allocate its resources efficiently.

**[9]** We have not yet addressed the question of whether and to what extent a district court may review the government's decision not to file a motion under section 3E1.1(b) for a third level reduction for acceptance of responsibility by a defendant. Espinoza-Cano's argument requires us to consider the standards by which the government's decision not to file a motion for a third level reduction for acceptance of responsibility should be reviewed, and we address this question of law de novo. *Cortes*, 299 F.3d at 1037.

**[10]** The starting point for our analysis is the recognition that the language in section 3E1.1(b) requiring a motion by the government for a third level reduction for acceptance of responsibility is similar to the language found in section 5K1.1 governing substantial assistance motions brought by the government. *United States v. Moreno-Trevino*, 432 F.3d 1181, 1186 (10th Cir. 2005). Both sections 3E1.1(b) and 5K1.1 state that an additional adjustment in offense level is available "upon motion of the government." Under section 5K1.1, the court may depart downward under the Guidelines "upon motion of the government" when a defendant has provided substantial assistance. Similarly, section 3E1.1(b) provides that "upon motion of the government" the court may depart downward for a defendant's timely notification of his intent to plead guilty. It is a long-established principle of statutory construction that similar statutory language should be construed similarly. *Northcross v. Bd. of Educ. of Memphis City Sch.*, 412 U.S. 427, 428, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973); *United States v. Sioux*, 362 F.3d 1241, 1246 (9th Cir. 2004). This principle of consistent statutory construction for similar language provides initial support for the proposition that prosecutors should be afforded the same discretion to file motions under section 3E1.1(b) as they have for motions under section 5K1.1.

**[11]** Next, looking to our sister circuits, we note that the Sixth, Eighth, and Tenth Circuits have all concluded that "prosecutors should be afforded the same discretion to file acceptance-of-responsibility motions under Section 3E1.1(b) as substantial-assistance motions under Section 5K1.1." *Moreno-Trevino*, 432 F.3d at 1185-86; *accord United States v. Smith*, 429 F.3d 620, 628 (6th Cir. 2005) (observing that the government's decision not to file a motion under section 3E1.1(b) could not be "based on a constitutionally impermissible motive such as race or religion"); *United States v. Smith*, 422 F.3d 715, 726 (8th Cir. 2005) ("[T]he Government's failure to file a § 3E1.1(b) motion must be rationally related to a legitimate governmental end . . . .").

The Tenth Circuit, in particular, has recognized that the government's discretion to file a motion under section 3E1.1(b) is "a power, not a duty," *Moreno-Trevino*, 432 F.3d at 1186 (citing *Wade v. United States*, 504 U.S. 181, 185, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992), observing that the government has the power, but not a duty to file a substantial assistance motion). Drawing heavily upon the principle of consistency in statutory construction, the Tenth Circuit concluded that "a court can review the government's refusal to file a Section 3E1.1(b) motion and grant a remedy if it finds the refusal was '(1) animated by an unconstitutional motive, or (2) not rationally related to a legitimate government end.' " *Id.* (citation omitted).

The *Moreno-Trevino* court further recognized that the recent amendment to section 3E1.1(b) added an Application Note emphasizing that it is the government that is in a superior position to assess "whether the defendant has assisted authorities in a manner that avoids preparing for trial . . . ." U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.6. We agree with the *Moreno-Trevino* court that the Application Note is significant for two reasons. First, it reflects common sense because, in fact, the government is in the best position to (1) know what *it* has and has not done in relation to trial

preparation, and (2) assess whether the defendant's notification of an intent to plead guilty has assisted the government in avoiding trial preparation. Second, this Application Note is important because it amounts to a de facto presumption that the government possesses superior knowledge of its trial preparation status. This presumption, in turn, justifies the requirement that a defendant who challenges the government declining to move for a third level of acceptance of responsibility has a threshold evidentiary burden to show unconstitutional motive, or arbitrary governmental action.[11] This threshold requirement is properly placed upon the defendant who urges unconstitutional motive or arbitrary action and is consistent with a similar requirement for a defendant who challenges the government's decision not to bring a substantial assistance motion under section 5K1.1.[12]

**[12]** Accordingly, we join the Sixth, Eighth, and Tenth Circuits, holding that a prosecutor is afforded the same discretion to file an acceptance of responsibility motion for a third level reduction under section 3E1.1(b) as that afforded for the filing of a substantial assistance motion under section 5K1.1. That standard is, "the government cannot refuse to file . . . a motion on the basis of an unconstitutional motive (e.g., racial discrimination), or arbitrarily (i.e., for reasons not rationally related to any legitimate governmental interest)." *United States v. Murphy*, 65 F.3d 758, 762 (9th Cir. 1995) (citing *United States v. Burrows*, 36 F.3d 875, 884 (9th Cir. 1994)); *accord Wade*, 504 U.S. at 186, 112 S.Ct. at 1843-44.

**[13]** Espinoza-Cano argues that although the government may have the same discretion under section 3E1.1(b) as it does under section 5K1.1, the government's decision not to

---

[11]Discussed, *infra*.

[12]As the Supreme Court has recognized, neither a mere claim of substantial assistance nor a generalized allegation of improper motive would entitle a defendant to a remedy, discovery, or an evidentiary hearing. *Wade*, 504 U.S. at 186, 112 S.Ct. at 1844.

file a motion in this case was arbitrary because he satisfied the prerequisite of permitting the government to avoid trial preparation when he opted to proceed by way of a stipulated bench trial. This contention, however, runs afoul of our holding in *Villasenor-Cesar* that proceeding by way of a stipulated bench trial is inconsistent with notifying authorities of an intent to plead guilty, *Villasenor-Cesar*, 114 F.3d at 974, and ignores the principle that a defendant's fulfillment of the conditions for a motion for an adjusted offense level is necessary, but does not mandate relief. *Wade*, 504 U.S. at 187, 112 S.Ct. at 1844.

In construing section 3E1.1 before the PROTECT Act, we concluded that former subsection (b)(2), which provided for an additional one-level downward adjustment when the defendant "timely notif[ied] authorities of his intention to enter a plea of guilty," could not be satisfied if the defendant proceeded to a stipulated bench trial. *Villasenor-Cesar*, 114 F.3d at 974. In *Villasenor-Cesar*, the defendant argued that he was entitled to a downward adjustment under subsection (b)(2), despite the fact that he had not notified authorities of his intent to plead guilty, because he did not challenge his factual guilt at his stipulated bench trial.[13] We explained that the defendant's argument failed because it ran contrary to the "language, structure, history, and policy" of the Guidelines. *Id.* Application Note 2 only applied to subsection (a)— which granted a two-level reduction for clearly demonstrating an acceptance of responsibility— because it was possible for a defendant to "show contrition . . . while making a legal challenge at trial." *Id*. It would have been illogical to apply Application Note 2 to subsection (b)(2) because "[a] defendant cannot . . . timely notify the Government of an intent to plead guilty, thus permitting the Government to avoid trial preparation and, at the same time, proceed to trial." *Id.*

---

[13]Application Note 2 of the Guidelines provided that a defendant could both "clearly demonstrate an acceptance of responsibility" and "exercise[ ] his constitutional right to a trial." *Villasenor-Cesar*, 114 F.3d at 973 (quoting U.S. Sentencing Guidelines Manual § 3E1.1 cmt. n.2 (1995)).

The PROTECT Act does not undermine the reasoning of *Villasenor-Cesar*. Instead, the PROTECT Act makes the third level reduction subject to the discretion of the government, rather than mandatory, upon a timely plea of guilty. Otherwise, the language of section 3E1.1(b) tracks the former language of section 3E1.1(b)(2). Espinoza-Cano attempts to distinguish *Villasenor-Cesar* by arguing that in *Villasenor-Cesar* the defendant had contested the legality of his prior deportation.[14] Our analysis in *Villasenor-Cesar*, however, did not turn on the content of the stipulated bench trial. Rather, it was the plain language of the Guidelines that precluded a defendant from both proceeding to trial and receiving a third level reduction in offense level for notifying the prosecution of his intent to plead guilty.

Espinoza-Cano argues that by withholding the motion, the government is penalizing him for exercising his right to pursue an appeal. Espinoza-Cano relies on *Cortes*, 299 F.3d 1030, and *United States v. Vance*, 62 F.3d 1152 (9th Cir. 1995), in support of this argument, but both cases are distinguishable.

In *Cortes*, we held that it was possible for a defendant both to exercise his right to a trial and to demonstrate acceptance of responsibility. *Cortes*, 299 F.3d at 1038. *Cortes* did not address whether the third level reduction can be withheld from a defendant who refuses to plead guilty — and satisfy the prerequisite to the additional reduction — because he wishes to retain his right to appeal. In *Vance*, we held that the defendant's filing of a motion to suppress evidence could not

---

[14]In fact, this is a point of similarity between *Villasenor-Cesar* and the present case. Espinoza-Cano also raised legal challenges to the indictment in a motion to dismiss. In *Villasenor-Cesar*, we affirmed the district court's decision to award only a two-point reduction, notwithstanding the district court's concerns that the defendant may have been penalized for raising constitutional defenses, because — as discussed in the text — a stipulated bench trial does not satisfy the prerequisite of notifying the government of an intent to plead guilty. *Villasenor-Cesar*, 114 F.3d at 973.

be held against him in determining acceptance of responsibility. *Vance*, 62 F.3d at 1157. We declared that the exercise of a constitutional right could not be used against a defendant in the analysis of whether a defendant had demonstrated acceptance of responsibility. *Id.* We stated further that filing a motion to suppress evidence could not be a bar to receiving the third point for timely notifying the prosecution of an intent to plead guilty if the notification was still given far enough in advance that the government could avoid trial preparation. *Id.* Neither *Cortes* nor *Vance* bears on the question of whether the government may condition a motion for adjustment in offense level on the defendant's waiver of his right to trial, where the government has been vested with broad discretion to determine when the adjustment is appropriate. We commented in *Villasenor-Cesar*, and reaffirm now, that there is nothing improper about the government providing an incentive to plea bargain. *Villasenor-Cesar*, 114 F.3d at 975 (citing *United States v. Narramore*, 36 F.3d 845, 847 (9th Cir. 1994)); *accord Corbitt v. New Jersey*, 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978) ("[N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid.").

**[14]** The government's decision not to file a motion for a third point is fully consistent with our holding in *Villasenor-Cesar*. By proceeding to trial, Espinoza-Cano did not allow the government to avoid spending resources on preparing for trial. Even if we were to equate a stipulated bench trial with an outright guilty plea, the government still would not have been compelled to file the motion. *Wade*, 504 U.S. at 187, 112 S.Ct. at 1844. There are rational reasons for the government to prefer an outright guilty plea to a stipulated bench trial. In particular, as the government urges, a plea of guilty allows the government to avoid expending resources "anticipating, and ultimately defending, a complete appeal." As noted in *Wade*, "[t]he Government's decision not to move may [be] based . . . simply on its rational assessment of the cost and benefit that would flow from moving." *Id.*

**[15]** Because we find the district court reached the right result when it denied Espinoza-Cano's request for a third point for acceptance of responsibility, we decline Espinoza-Cano's invitation to remand this case for further proceedings. A defendant is not entitled to an evidentiary hearing based merely upon his claim or allegation that the government's decision not to move for a third level acceptance of responsibility reduction was the result of unconstitutional or arbitrary government action. *See Wade*, 504 U.S. at 186, 112 S.Ct. at 1844. As is the case for substantial assistance motions, the defendant must present objective evidence of an improper motive on the part of the government. *Murphy*, 65 F.3d at 762. Before the district court, Espinoza-Cano made only an unsubstantiated claim of arbitrariness without providing any evidence to meet this threshold burden. The government presented adequate justification for declining to file a motion for a third level reduction, specifically that the case proceeded to trial and the government was required to undertake preparation. The government's decision not to move for a third level reduction is supported by *Villasenor-Cesar* and by the government's correct interpretation of section 3E1.1(b) and its commentary.

## IV. CONCLUSION

For the foregoing reasons, Espinoza-Cano's conviction and sentence are

**AFFIRMED**.