FILED
United States Court of Appeals
Tenth Circuit

August 12, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ROBBIE LYNN NARAMOR,

Defendant - Appellant.

No. 12-7053

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. NO. 6:10-CR-00044-JHP-1)**

---

Robert Ridenour, Assistant Federal Public Defender, (Julia L. O'Connell, Federal Public Defender, and Carl Folsom, III, Research and Writing Specialist, with him on the briefs), Office of Federal Public Defender, Muskogee, Oklahoma, for Defendant - Appellant.

Shannon L. Henson, Assistant United States Attorney, (Mark F. Green, United States Attorney, and Linda A. Epperley, Assistant United States Attorney, with her on the brief), Muskogee, Oklahoma, for Plaintiff - Appellee

---

Before **HARTZ**, **MCKAY**, and **MATHESON**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Defendant Robbie Lynn Naramor pleaded guilty in the United States District Court for the Eastern District of Oklahoma to mailing a threatening communication to a state judge. *See* 18 U.S.C. § 876(c). There was no plea agreement. The district court varied upward from the sentencing range calculated under the United States Sentencing Guidelines and sentenced Defendant to 60 months' imprisonment, the statutory maximum for the offense.

Defendant appeals his sentence, arguing (1) that the district court erred in using a prior state conviction to calculate his criminal-history category because he had not validly waived his right to counsel in those proceedings; (2) that the court erred in permitting the government to withdraw a motion to award Defendant a reduction to his offense level for acceptance of responsibility; (3) that his sentence was procedurally unreasonable because the court increased his sentence to serve his rehabilitative needs; and (4) that the sentence was substantively unreasonable.

We have jurisdiction under 28 U.S.C. § 1291 and affirm. The district court could properly find that Defendant had not proved that he had been denied the right to counsel in his state-court proceedings. It did not err in permitting the government to withdraw its motion to reduce Defendant's offense level for acceptance of responsibility because the withdrawal was not motivated by an unconstitutional purpose and was rationally related to legitimate government ends. The court did not rely on rehabilitation as a reason for increasing

-2-

Defendant's sentence.  And Defendant's sentence was substantively reasonable because of his history of violence.

We provide the necessary factual background as we discuss each issue.

## I.  VALIDITY OF PRIOR STATE CONVICTION

In calculating Defendant's criminal-history category, the district court added two points under USSG § 4A1.1(b) (2009) for a state-court conviction of assault for which he received a one-year sentence.  Defendant complains that he had no attorney in the state-court proceedings and had not validly waived his right to counsel.  We assume, without deciding, that if he had not validly waived counsel, the conviction could not justify the two criminal-history points.  *See United States v. Cruz-Alcala*, 338 F.3d 1194, 1197 (10th Cir. 2003) (noting that a defendant may challenge a prior conviction used for a guidelines calculation if he was subjected to a "complete denial of counsel," but that we have not decided whether such a challenge can be based on an "involuntary or unknowing waiver" (internal quotation marks omitted)).[1]

---

[1] Defendant concedes that he could have received one criminal-history point under USSG § 4A1.1(c) (2009) (one point "for each prior sentence" of less than 60 days imprisonment) from the conviction because his sentence included a fine, and "a federal sentencing court may, consistent with the Sixth Amendment, take into account a defendant's previous uncounseled misdemeanor convictions, together with any sentence that does not result in actual imprisonment." *United States v. Jackson*, 493 F.3d 1179, 1180 (10th Cir. 2007).  The one point under subsection (c) (instead of the two points under subsection (b)) would have resulted in a lower criminal-history level, thereby reducing Defendant's guidelines range.

The record reveals the following information about the state-court proceedings. In July 2008 Defendant was arrested on a charge of assault and battery–domestic abuse. In the Oklahoma county where Defendant was indicted, defendants may request court-appointed counsel by filling out an application form available from the court clerk. Applicants must pay a $40 application fee, but the application form states that defendants with insufficient funds may seek deferral of payment from the judge.

The state court's minutes reflect that at his initial appearance Defendant was informed that he had a right to appointed counsel if he was indigent. But he did not apply for court-appointed counsel and represented himself. No signed waiver of counsel appears in the record, nor is there any record that the judge found that Defendant had knowingly and voluntarily waived his right to counsel. Defendant was convicted on the charge at a nonjury trial on November 13, 2008, and was promptly sentenced to the county jail for one year, with all but 90 days suspended. The judgment further ordered that Defendant undergo a competency evaluation while incarcerated, complete any recommended treatment, and "complete anger management." R., Vol. 3 at 49 (capitalization omitted). There is no record that the judge found Defendant competent or that the parties raised any question of his competency.

On January 3, 2009, an evaluator from the Mental Health and Substance Abuse Centers of Southern Oklahoma (MHSAC) determined that Defendant was competent. The evaluation concluded:

> This evaluation was determined through a one on one interview with the defendant. . . . Defendant was compliant and open, stated that he did not have an attorney at his trial because he did not want one. His appearance was good, clean and no body odor. He was alert but refused to answer most questions. He demonstrated that he understood his charges and the consequences.
> The defendant did not demonstrate any reason to believe that he is incompetent . . . .

*Id.* at 27.

Defendant was released from jail on February 11 and ordered to report for mental-health treatment, although no reasons were stated for the order. Defendant did not report and was rearrested on February 24. On April 16 Defendant filed a request for appointed counsel, which was granted that day. A week later his counsel filed an application for an independent mental evaluation.

MHSAC conducted a second competency evaluation on June 10. After a two-hour interview, the evaluator determined that Defendant was competent and would not be a threat to the life or safety of others if released.

On June 16, however, the judge received a letter from Defendant. Using vulgar language, it threatened to kill the judge and members of Defendant's family. (This letter is the basis for the federal indictment.) Several more threatening letters from Defendant to the judge followed.

In response, the court ordered the Oklahoma Forensic Center of the Oklahoma Department of Mental Health and Substance Abuse Services to conduct another evaluation. On September 9 the Center issued its evaluation that Defendant's ability to consult with a lawyer or rationally assist in the preparation of his defense was impaired. It said that Defendant had pressured speech, grandiose delusions, and disorganized, incoherent thoughts. It concluded that Defendant should be committed for competency restoration and that his mental state could be stabilized with treatment and psychotropic medication. Defendant was admitted to the Oklahoma Forensic Center on November 2. On December 15, after Defendant had been treated with antipsychotic and mood-stabilizing medications, the Center conducted another evaluation. It determined that Defendant had regained competency after treatment, and he was returned to county jail.

From this information, Defendant argues that his waiver of counsel was not knowing and voluntary because (1) the trial judge failed to inquire about Defendant's understanding of his right to counsel and his willingness to waive it; (2) he was incompetent during trial and sentencing; and (3) the process for seeking appointment of counsel was flawed in that (a) the application form for obtaining counsel was "arduous," Aplt. Br. at 29, and (b) Defendant was told that he would have to pay (at least eventually) a $40 application fee, which he could not afford.

The district court rejected Defendant's argument that he had not validly waived his right to counsel, specifically noting that it had considered the question of Defendant's competency in the state proceedings. "In considering a collateral attack against a prior conviction, the findings of a district court that the defendant knowingly and intelligently waived his right to counsel in the prior case are reviewed for clear error." *United States v. Krejcarek*, 453 F.3d 1290, 1296 (10th Cir. 2006). "[W]e view the evidence and inferences therefrom in the light most favorable to the district court's determination." *United States v. Kitchell*, 653 F.3d 1206, 1226 (10th Cir. 2011) (internal quotation marks omitted). Even when the record is clear that the defendant was not represented by counsel, "[o]nce the prosecution establishes the existence of a conviction, the *defendant* must prove by a preponderance of the evidence that the conviction was constitutionally infirm." *Cruz-Alcala*, 338 F.3d at 1197 (internal quotation marks omitted). To overcome the "presumption of regularity that attaches to final judgments," the defendant "may not simply point to a silent or ambiguous record, but must come forward with affirmative evidence establishing that the prior convictions were obtained in violation of the Constitution." *Id.* (internal quotation marks omitted).

We hold that the district court did not clearly err in using Defendant's state sentence in calculating his criminal-history category, thereby implicitly finding that Defendant had not shown his waiver of counsel to be invalid. First, Defendant has not pointed to affirmative evidence—only "a silent . . . record,"

-7-

*id.*—to overcome the presumption that the state court had properly inquired whether his waiver of counsel was knowing and intelligent. Second, the evidence would not require a finding that Defendant was incompetent at his state trial and sentencing. Although he argues that the state court's ordering a competency evaluation at sentencing shows that symptoms of Defendant's mental illness "were undoubtedly present on the day of the trial and sentencing," Aplt. Br. at 29, the initial two evaluations of Defendant in January and June 2009—the ones closest in time to his plea—determined that he was competent. And even if one could infer from the state court's ordering a mental evaluation that it had concerns about Defendant's mental health, one would also have to infer from the court's imposition of sentence (and failure to vacate the sentence later) that it did not believe him to have been incompetent at trial and sentencing.

Finally, the district court could also reasonably reject the argument that Defendant had waived counsel simply because the process of applying for counsel was too burdensome. The three-page form (with one page of instructions) was not complex or difficult to fill out: it asked about defendants' living situation, attempts to get an attorney, and financial resources. Moreover, Defendant said during his first competency interview that he did not have counsel at his trial because he did not want representation, and he successfully applied for court-appointed counsel after he was rearrested in February 2009. The $40 fee was

apparently not an impediment. We therefore affirm the district court's rejection

of Defendant's claim that he had not validly waived counsel in state court.

## II. GOVERNMENT'S WITHDRAWAL OF MOTION FOR ACCEPTANCE-OF-RESPONSIBILITY REDUCTION

Defendant challenges the government's withdrawal of its motion to grant

him a one-point reduction for acceptance of responsibility under USSG

§ 3E1.1(b). A defendant may receive up to a three-point reduction in his offense

level for acceptance of responsibility. Under § 3E1.1(a), a defendant is entitled to

a two-level decrease if he "clearly demonstrates acceptance of responsibility for

his offense." USSG § 3E1.1(a). Under § 3E1.1(b), a defendant may receive an

additional one-level reduction if (1) he qualified for the two-point decrease, (2)

his offense level before receiving that reduction was 16 or greater, and (3) the

government files a motion:

> stating that the defendant has assisted authorities in the investigation
> or prosecution of his own misconduct by timely notifying authorities
> of his intention to enter a plea of guilty, thereby permitting the
> government to avoid preparing for trial and permitting the
> government and the court to allocate their resources efficiently.

*Id.* § 3E1.1(b).

Although the government has "broad discretion" whether to file a motion

for the additional one-point reduction, its "discretion is not unfettered." *United*

*States v. Moreno-Trevino*, 432 F.3d 1181, 1186 (10th Cir. 2005) (internal

quotation marks omitted). The court may reject the government's refusal to file a

motion under § 3E1.1(b) "if . . . the refusal was (1) animated by an unconstitutional motive, or (2) not rationally related to a legitimate government end." *Id.* (internal quotation marks omitted). We review for clear error the district court's decision whether to reject a refusal. *See United States v. Moore*, 683 F.3d 927, 930–31 (8th Cir. 2012); *United States v. Jaca-Nazario*, 521 F.3d 40, 59–60 (1st Cir. 2008).

The relevant facts begin with Defendant's guilty plea on July 16, 2010. There was no plea agreement but the government apparently recommended an offense-level reduction under § 3E1.1(b) for acceptance of responsibility. On April 20, 2011, the district court held a sentencing hearing. It said that it was "trying to figure out whether there's an issue now regarding the defendant's competency," R., Vol. 2 at 96, and asked whether it should order a competency hearing. Defense counsel responded, "Oh, my client, Mr. Naramor, is competent," and said that although he was mentally ill, Defendant had "always been competent throughout my representation." *Id.* at 97. The court asked defense counsel if he was "totally satisfied" that the competency test had been met. *Id.* at 98. Counsel repeated, "I'm satisfied Mr. Naramor is competent." *Id.* The court took Defendant's sentencing under advisement.

Six days later, however, the sentencing judge received a letter from Defendant, threatening in violent and obscene language to kill the judge and himself if he was not sent to the prison in Leavenworth, Kansas. On defense

counsel's motion, the court ordered a competency evaluation under 18 U.S.C. § 4241(b). In an evaluation dated May 27, 2011, a forensic psychologist concluded that Defendant was "*currently* suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings against him or properly assist in his defense." *Id.*, Vol. 3 at 66 (emphasis added). The evaluation said that Defendant was so impaired that he had difficulty communicating: "He frequently appeared to be actively psychotic, talking, singing, and gesturing loudly to empty space in the cell. During the evaluation period, he was unable to converse clearly, coherently, and rationally." *Id.* at 64–65. It did not opine whether Defendant had been incompetent or criminally responsible when he wrote the letter. The parties did not object to the findings in the evaluation, and the court ordered Defendant committed for treatment.

In December 2011 a psychiatric evaluation found that Defendant had regained competency, and he was issued a certificate of competency the following month. At a hearing on April 3, 2012, the parties stipulated to the evaluation, and the court found Defendant competent to proceed with sentencing. The government then filed a sentencing memorandum. It argued that Defendant was not entitled to the two-point reduction under USSG § 3E1.1(a) and moved to withdraw its motion to grant Defendant a one-point reduction under § 3E1.1(b). The court ruled that Defendant should still receive the two-level reduction for

acceptance of responsibility under § 3E1.1(a) because it did not "appear he had the ability to willfully obstruct or impede the administration of justice in this case." *Id.*, Vol. 2 at 196. But it granted the government's motion to withdraw the additional one-point reduction under § 3E1.1(b).

Defendant argues that the government violated his right to due process by withdrawing the motion because he was incompetent when he wrote the letter. But Defendant has not identified any constitutionally impermissible factor (such as his race, religion, or gender) animating the government's decision. *See United States v. Blanco*, 466 F.3d 916, 919 (10th Cir. 2006) (rejecting defendant's argument that the prosecutor's decision not to request a third-point reduction for acceptance of responsibility interfered with his discovery rights because defendant did not identify a "constitutionally impermissible reason" motivating the decision). Also, although the district court apparently believed that Defendant was not criminally responsible when he wrote the letter, the government could reasonably believe otherwise. *See Moreno-Trevino*, 432 F.3d at 1186–87 ("[T]he government reasonably found [defendant's] intent to be . . . 'totally inconsistent with acceptance of responsibility.'"). After all, Defendant's attorney thought he was competent (although mentally ill) less than a week before Defendant wrote his threatening letter; and the evaluation on which the judge relied did not opine on Defendant's criminal responsibility when he wrote the letter and described a capacity for communication by Defendant that appears to be markedly lower than

would have been necessary for Defendant to write the letter. Given the government's view of Defendant's criminal responsibility, it could reasonably decide that his writing a new threatening letter to a judge evinced a failure to accept responsibility for the very similar crime for which he had pleaded guilty. Thus, there was no clear error. The district court could properly rule that the government's decision—albeit one in which it may well not have concurred—was rationally related to a legitimate government end and could not be set aside.

## III.   CONSIDERATION OF REHABILITATIVE NEEDS IN LENGTHENING SENTENCE

Defendant argues that the district court violated *Tapia v. United States*, 131 S. Ct. 2382 (2011), by improperly considering his need for mental-health treatment in choosing to lengthen his sentence. When courts determine what sentence to impose, they must consider "the need for the sentence imposed— . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). At the same time, however, they are instructed that "imprisonment is not an appropriate means of promoting correction and rehabilitation." *Id.* § 3582(a).

Accordingly, *Tapia* explained that although "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs," and it can recommend that the Bureau of

Prisons (BOP) place a defendant in a particular treatment plan, 131 S. Ct. at 2392, it nevertheless "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation," *id.* at 2393 (emphasis omitted). Therefore we have held that a sentencing court commits *Tapia* error when it lengthens a defendant's sentence "for the express purpose of giving [the defendant] enough time to participate in a" prison rehabilitation program. *United States v. Mendiola*, 696 F.3d 1033, 1042 (10th Cir. 2012).

We reject Defendant's *Tapia* claim. To put that claim in perspective, we review how rehabilitation arose as an issue at sentencing. The district court first spoke of rehabilitation in responding to Defendant's motion for a downward departure or variance because of his mental illness. The court denied the motion. It recognized Defendant's need for treatment, but thought that earlier release would not improve treatment options:

> The sentencing commission has clearly stated that mental and emotional conditions or diminished capacity may be relevant in determining whether a departure is warranted if that factor is present to an unusual degree and distinguishes the case from the heartland of cases covered by the guidelines in a way that is important to the statutory purpose of sentencing.
> It is apparent the defendant is in need of continued mental health treatment. The defendant has no income, family, or community support system available to assist with his needs. Further, the Court recognizes the failure of the state's mental health system to provide necessary mental health services to the defendant. The mental health treatment available in the Bureau of Prisons would be instrumental in securing for Mr. Naramor the level of treatment

-14-

necessary to allow him to become a productive member of society after his release.

R., Vol. 2 at 197–98. And it concluded that the appropriate sentencing factors did not justify a downward variance or departure:

> In establishing an appropriate sentence for this defendant, the Court has considered the totality of the circumstances regarding the offense of conviction, the background, lengthy incarceration, and mental conditions of the defendant, in addition to the need for protection of the public. The Court has taken into consideration the combination of these factors, as well as the government's position in this matter.
> The Court recognizes its authority to depart or vary from the advisory sentencing range called for by the application of the guidelines. Taking into consideration the defendant's history and characteristics, as well as the offense conduct, need for just punishment, deterrence, and protection of the public, the Court cannot find that the circumstances in this case warrant a departure pursuant to U.S. Sentencing Guideline Section 5K2.13, or a variance based on the sentencing factors cited in 18 United States Code, Section 3553(a). The defendant's request for departure or variance is denied.

*Id.* at 198.

Later the court granted the government's motion for an upward variance to the statutory maximum, clearly relying on factors other than the need for prison rehabilitation programs. It said:

> In establishing an appropriate sentence for this defendant, the Court has considered the totality of the circumstances regarding the offense of conviction, the background and mental condition of the defendant, in addition to the need for protection of the public. The Court has taken into consideration the combination of these factors, as well as the defendant's position in this matter. The Court is sympathetic to the defendant for his unfortunate background. While some of the threatening letters sent by the defendant could be merely

-15-

hyperbole, the defendant has a documented history of violence which includes picking up his grandmother and slamming her on a gravel driveway, slapping with force and violence a victim, as cited Paragraph 33 of the presentence report, and threats to kill family members and judges. His grandmother previously reported that the defendant was regularly violent. Even after his mental health diagnosis, the defendant made serious threats of violence against the original judge in this case. This history of violence, along with the defendant's continued inability to control his anger, and history of being noncompliant with medication at times during his evaluation with the Bureau of Prisons causes the Court concern that the defendant poses an actual danger to the public. The Court believes the public needs to be protected from the defendant.

The Court recognizes its authority to vary from the advisory sentencing range called for by application of the guidelines. *Taking into consideration the defendant's history and characteristics, as well as the offense conduct, need for just punishment, deterrence, and protection of the public, the Court finds that the circumstances in this case warrant a variance* based on the sentencing factors cited in 18 U.S.C. Section 3553(a). The government's request for a variance is granted.

The Court finds that a sentence of 60 months custody achieves the purposes of sentencing set out in 18 U.S.C. Section 3553(a).

*Id.* at 199–200 (emphasis added).

After reading aloud a letter from Defendant to the court requesting leniency, defense counsel objected that "the Court has imposed a sentence which, to some degree, I think relies upon a rationale of rehabilitation," and said that "the purpose of incarceration can't necessarily be for treatment or rehabilitation." *Id.* at 203. Neither the court nor the government responded to Defendant's objection.

The court announced Defendant's sentence of 60 months' imprisonment and recommended "that the Bureau of Prisons evaluate the defendant and

-16-

determine if he is in need of psychological treatment, and that he be placed in a facility to appropriately treat any determined mental health problems." *Id.* at 206. It also imposed a term of supervised release, requiring Defendant to "participate in a mental health treatment program approved by and directed by the U.S. Probation Office," and "comply with all treatment directives." *Id.* at 207. Summarizing its reasons for the sentence, the court stated:

> The Court imposes this sentence pursuant to 18 U.S.C. Section 3553(a). The Court has considered the U.S. Sentencing Guidelines in this case and imposes a sentence within the guideline options set forth in Zone D of the sentencing table. The sentence prescribed by this Court reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. This sentence affords adequate deterrence to criminal conduct, protects the public from further crimes of this defendant, and *provides correctional treatment for the defendant in the most effective manner.* The Court has further determined that this sentence is sufficient, but not greater than necessary, to meet the objectives set forth in 18 U.S.C. Section 3553(a).

*Id.* at 208 (emphasis added).

The district court later filled out a "Statement of Reasons" form to explain why it imposed the chosen sentence. *Id.*, Vol. 4 at 21–24. One section required the court to check up to seven boxes, each indicating a separate reason for imposing a sentence outside the advisory guidelines range. The court checked five of the boxes, one of which stated that a purpose of the variance was "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C.

-17-

§ 3553(a)(2)(D)).” *Id.* at 23.  Below the boxes, in paragraph form, the court explained “the facts justifying a sentence outside the advisory guideline system.” *Id.*  There, the court repeated almost verbatim its statements at sentencing granting the upward variance.  Emphasizing Defendant’s dangerousness and “[t]aking into consideration the defendant’s history and characteristics, as well as the offense conduct, need for just punishment, deterrence, and protection of the public,” it said that an upward variance to the statutory maximum was warranted. *Id.*

We see no *Tapia* error.  The district court properly discussed Defendant’s need for mental-health treatment when denying Defendant’s motion for a downward variance.  It rejected Defendant’s arguments that his mental illness warranted *leniency*, but it did not tie the length of his sentence to his need for treatment.  When granting the upward variance and stating its reasons for the sentence, the court listed only permissible factors, not rehabilitation.  Indeed, the court recognized that the prison might not find treatment appropriate, and mandated treatment after his release.  Although the court announced that the entire sentence (including the supervised-release term) would “provide[] correctional treatment for the defendant in the most effective manner,” *id.*, Vol. 2 at 208, it did not indicate that the term of imprisonment itself was imposed or lengthened based on Defendant’s treatment needs, and it is proper for courts to “pursue the goal of rehabilitation in sentencing, for example, in setting the terms

of supervised release," *Cordery*, 656 F.3d at 1106, or recommending treatment in prison. *See Tapia*, 131 S. Ct. at 2392.

The only problematic statement by the court is its checking the box on the Statement of Reasons form to include among its reasons for the upward variance "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." R., Vol. 4 at 23. But that ambiguous mark cannot override the court's explanation at the sentencing hearing and the paragraph of explanation just below the checked box. We, like our fellow circuits, recognize the importance of *Tapia*'s instruction but we are not looking for stray remarks and technical errors to set aside sentencing decisions that were certainly *Tapia* compliant. *See United States v. Lifshitz*, 714 F.3d 146, 149–150 (2d Cir. 2013) (district court did not commit *Tapia* error when it said that it was "important to be sure that [the defendant] continues to get the type of medical care he is obviously in need of," because there was "no indication in the record that the district court based the length of [the defendant]'s sentence on his need for treatment" and the "colloquy demonstrate[d] that the district court's primary considerations . . . were promoting respect for the law and protecting the public." (internal quotation marks omitted)); *United States v. Rickert*, 685 F.3d 760, 769 (8th Cir. 2012) (no *Tapia* error when district court recommended to the BOP that defendant continue to receive mental health treatment, and said that it thought the BOP was capable of treating the

defendant's mental-health problems.); *United States v. Replogle*, 678 F.3d 940, 943 (8th Cir. 2012) (no *Tapia* error when district court stated that "one of the elements of sentencing . . . is to make sure you get the treatment and training and education necessary to help you go forward," because "[t]he court made no statement that the term of 360 months, as opposed to a shorter term, was imposed for the purpose of facilitating treatment, training, and education." (internal quotation marks omitted)); *United States v. Gilliard*, 671 F.3d 255, 259 (2d Cir. 2012) (no *Tapia* error when district court said that it was "important . . . that [the defendant] be sentenced in such a way that [he is] able to address" his rehabilitative needs because there was "no indication that the district court tied the length of the sentence to any treatment [the defendant] would receive." (internal quotation marks omitted)); *United States v. Lucas*, 670 F.3d 784, 795 (7th Cir. 2012) (district court did not commit *Tapia* error by stating that among its reasons for imposing the sentence was to "provide the opportunity for rehabilitative programs"; "the mere mention that [the defendant] would have the opportunity to take part in rehabilitative programs is not prohibited under *Tapia*." (internal quotation marks omitted)).

## IV. SUBSTANTIVE UNREASONABLENESS

A sentence is substantively unreasonable if "the length of [the] sentence was excessive given all the circumstances of the case in light of the factors set forth in [18 U.S.C.] § 3553(a)." *United States v. Gantt*, 679 F.3d 1240, 1249

(10th Cir. 2012) (internal quotation marks omitted). Those factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (2) "the need for the sentence imposed" to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant," *id.* § 3553(a)(2); and (3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6). "Under a deferential abuse-of-discretion standard, we deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *Gantt*, 679 F.3d at 1249 (internal quotation marks omitted).

Defendant argues that his sentence was substantively unreasonable because (1) his prior criminal history amounted to a single assault offense; (2) he committed the offense while "detained without due process in the Bryan County, Oklahoma jail" and his letters were nothing more than a "cry for attention to a judge who [Defendant] justifiably believed was simply indefinitely detaining him," Aplt. Br. at 34; (3) Defendant had diminished capacity at the time of the offense because of his mental illness and incompetency; (4) Defendant's sentence is too harsh when compared with a sentence received by a defendant in a similar case in the same court; (5) the sentence would not deter other criminal conduct because it was "not a highly publicized case" and anyone similarly situated to

-21-

Defendant (or Defendant himself) would not "be able to perceive the sentence and use it to adjust future behavior," *id.* at 36; and (6) Defendant committed the offenses while incarcerated, so further incarceration will not protect the public.[2]

We see no abuse of discretion. The district court reasonably determined that Defendant's "history of violence, along with the defendant's continued inability to control his anger, and history of being noncompliant with medication at times during his evaluation with the Bureau of Prisons causes the Court concern that the defendant poses an actual danger to the public." R., Vol. 2 at 200.

## V.    CONCLUSION

We AFFIRM Defendant's sentence.

---

[2] Defendant also argues that his sentence is substantively unreasonable because the district court violated *Tapia* by lengthening his sentence to promote his rehabilitation. The Sixth Circuit has held that a sentence was substantively unreasonable because of *Tapia* error. *See United States v. Walker*, 649 F.3d 511, 514 (6th Cir. 2011). We do not reach the issue whether a *Tapia* error may render a sentence substantively unreasonable because we have held that there was no *Tapia* error.