FILED
United States Court of Appeals
Tenth Circuit

January 3, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

MICHAEL KO,

    Defendant - Appellee.

No. 13-3064

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 2:12-CR-20137-CM-1)**

---

Richard Friedman, Appellate Section, Criminal Division, United States Department of Justice, (Barry R. Grissom, United States Attorney, James A. Brown, Assistant U.S. Attorney, District of Kansas, and Mythili Raman, Acting Assistant Attorney General, and Denis J. McInerney, Acting Deputy Assistant Attorney General, with him on the briefs), Washington, D.C., for Plaintiff - Appellant.

Thomas Bartee, Assistant Federal Public Defender (Cyd Gilman, Federal Public Defender, with him on the brief), Kansas City, Kansas, for Defendant - Appellee.

---

Before **KELLY**, **EBEL**, and **BACHARACH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

    The government appeals from a district court order dismissing a

superseding indictment against Defendant–Appellee Michael Ko. Mr. Ko was subject to home confinement; the indictment charged him with escape under 18 U.S.C. § 751(a) for failing to return to his residence. Our jurisdiction arises under 18 U.S.C. § 3731, and we reverse.

## Background

In 2009, Mr. Ko was sentenced to sixty months' imprisonment for a federal conviction of conspiracy to distribute methamphetamine. Mr. Ko was committed to the custody of the Federal Bureau of Prisons ("BOP") and served most of his sentence in prison. With six months left in his sentence, however, the BOP transferred Mr. Ko to the Grossman Community Corrections Center, a halfway house in Leavenworth, Kansas. In September 2012, with approximately four months left in his sentence, the BOP transferred Mr. Ko to confinement at his home in Leavenworth.

Before transferring to his home, Mr. Ko signed a Community Based Program Agreement with the BOP. In it, Mr. Ko recognized that, even though he enjoyed relative freedom in his own home, he would "legally remain in the custody of the Bureau of Prisons and/or the U.S. Attorney General." Aplt. App. 31. He further acknowledged "that failure to remain at the required locations may result in disciplinary action and/or prosecution for escape." Id. He agreed to wear an electronic monitoring bracelet, to remain at his residence except for

- 2 -

employment, and to return home by 7:00 p.m. each day.

At approximately 7:25 p.m. on October 12, 2012, Mr. Ko's monitoring bracelet alerted the Grossman Center that he had failed to return to his residence. After multiple unsuccessful attempts to locate or contact Mr. Ko, the Grossman Center contacted the U.S. Marshals, resulting in a complaint charging Mr. Ko with escape under 18 U.S.C. § 751(a) and a warrant for his arrest. Aplt. App. 9-12, 13. On October 19, 2012, Mr. Ko was arrested in Kansas City.

On October 30, 2012, a federal magistrate judge dismissed the criminal complaint against Mr. Ko, concluding that Mr. Ko was not in "custody" within the meaning of § 751 at the time of his alleged escape. Aplt. App. 19. The next day, a federal grand jury indicted Mr. Ko on an identical charge. Aplt. App. 20. On December 12, 2012, a federal grand jury issued a superseding indictment, clarifying that Mr. Ko was charged with escape "from the custody of the Attorney General, or his authorized representative," such custody arising by virtue of his conspiracy conviction. Aplt. App. 23.

On February 6, 2013, the district court granted Mr. Ko's motion to dismiss the superseding indictment. Aplt. App. 33-34. The court agreed with the magistrate judge's earlier holding that § 751 did not contemplate absconding from home confinement. Id. at 32-33. The court concluded that, in "the absence of Supreme Court or Tenth Circuit precedent addressing the facts of this case," the rule of lenity required dismissal. Id. at 33.

- 3 -

We review whether a person is in "custody" under § 751, a question of law, de novo. United States v. Sack, 379 F.3d 1177, 1178 (10th Cir. 2004). According to the United States, a person is in "custody" while serving out a sentence at a place designated by the BOP, regardless of where that might be. Aplt. Reply Br. 9. In turn, Mr. Ko argues that the meaning of "custody" under § 751 is ambiguous, requiring application of the rule of lenity. Aplee. Br. 7, 19.

When construing statutes, we begin with the plain language of the text itself. Watt v. Alaska, 451 U.S. 259, 265 (1981). The federal escape statute, 18 U.S.C. § 751, provides, in pertinent part, that:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative . . . shall, if the custody or confinement is by virtue of . . . conviction for any offense, be fined under this title or imprisoned not more than five years, or both . . . .

18 U.S.C. § 751(a). Mr. Ko argues that the plain meaning of "custody" connotes "real physical confinement" that does not suggest "leaving one's own home." Aplee. Br. 8. He relies upon various dictionary definitions that might support that interpretation. Id. at 8-9. Our own review demonstrates that "custody" does not necessarily require an element of physical restraint. Rather, anyone under "immediate charge and control . . . exercised by a person or an authority" may be said to be in "custody." Webster's 9th New Collegiate Dictionary 318 (1991). Moreover, the definition of one word in isolation "is not necessarily controlling in

statutory construction." Dolan v. U.S. Postal Service, 546 U.S. 481, 486 (2006). Proper interpretation of a word "depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedent or authorities that inform the analysis." Id.

We first consider the context of § 751 by examining related statutes. It is beyond dispute that the BOP, an agency of the United States Department of Justice, is an "authorized representative" of the Attorney General. See 18 U.S.C. §§ 4041, 4042(a); United States v. Wilson, 503 U.S. 329, 331 (1992). After being "sentenced to a term of imprisonment," a person becomes a "prisoner" and is "committed to the custody of the Bureau of Prisons until the expiration of the term imposed." 18 U.S.C. § 3621(a). Once committed, the BOP has the authority to "designate the place of the prisoner's imprisonment." Id. at § 3621(b). In the final months of the prisoner's term of imprisonment, such places "may include a community correctional facility" or "home confinement." 18 U.S.C. § 3624(c)(1), (2). The statute makes clear that, even though a prisoner is living at a halfway house or in home confinement, he is still serving a "term of imprisonment." Id.

When read together, these statutes plainly indicate that a person is in the BOP's "custody" while serving the remainder of a sentence in home confinement. While at home, the confinee is serving a "term of imprisonment," and the statute refers to the confinee as "a prisoner." Id. at § 3624(c)(2). The confinee is in "the custody of the Bureau of Prisons" up to and "until the expiration of the term

- 5 -

imposed," id. at § 3621(a), and such term includes the time spent in home confinement, id. at § 3624(c)(1), (2). To say that a prisoner is within the "custody of the Bureau of Prisons" under § 3621 while confined to his home, but not within its custody under § 751 when he escapes that confinement, defies logic. To hold otherwise would draw an arbitrary, and indeterminate, line between the statute that commits a prisoner to BOP custody (§ 3621) and the statute that ensures he remains in that custody (§ 751).

Mr. Ko tries to prevent this conclusion by noting that 18 U.S.C. § 4082, which extended the escape statute to abscondment from halfway houses and work release, did not extend the escape statute to home confinement. Aplee. Br. 11-12. We are not persuaded. Section 4082 extends the list of what "shall be deemed an escape" under § 751; it does not purport to limit escape to its terms. 18 U.S.C. § 4082(a). Accordingly, we conclude that absconding from home confinement is itself an escape under § 751, independent of the proscriptions of § 4082. Cf. McCullough v. United States, 369 F.2d 548, 550 (8th Cir. 1966) (noting that § 4082 does not preclude applying the "general escape portions of § 751" to an escape from a halfway house). We therefore find no ambiguity created by § 4082 requiring us to reach an outcome different than that dictated by the plain language of §§ 751, 3621, and 3624. See United States v. Husted, 545 F.3d 1240, 1245-46 (10th Cir. 2008). When read in context, "custody" in § 751 does not engender a "grievous ambiguity or uncertainty" necessitating application of the rule of lenity.

See Muscarello v. United States, 524 U.S. 125, 138 (1998) (internal quotations omitted).

Moreover, "our precedent has treated custody under § 751 broadly." Sack, 379 F.3d at 1179. In Sack, this court concluded that a defendant was in § 751 custody while residing at a "halfway house as a result of an order of the district court." Id. We concluded that, although a halfway house entails fewer restrictions than prison, "the restrictions of life at a halfway house are sufficiently limiting so as to constitute custody for the purposes of § 751." Id. at 1179 n.1. In so holding, this court referenced only one restriction—the inability "to come and go at will." Id. (quoting United States v. Swanson, 253 F.3d 1220, 1224 (10th Cir. 2001)). Likewise, this court in United States v. Depew, concluded that a federal prisoner, who was in transit between two state facilities on a writ of habeas corpus ad prosequendum, was in § 751 custody. 977 F.2d 1412, 1414 (10th Cir. 1992). We held that § 751 custody "does not require direct physical restraint." Id. In fact, § 751 custody "may be minimal and, indeed, may be constructive." Id.[1]

Home confinement is analogous to custody in a halfway house. Like a prisoner in a halfway house, Mr. Ko was not free to come and go as he pleased—his confinement required him to remain in his home from 7:00 p.m. each

---

[1] Mr. Ko characterizes these statements from Depew as dicta, yet in Sack we repeatedly referred to these statements as "our holding" from Depew. Sack, 379 F.3d at 1179 n.1, 1181.

night until he was permitted to go to work the following morning. His agreement with his custodian—the BOP—acknowledged this restraint, including the possibility of "prosecution for escape" should he fail to abide. Aplt. App. 31. Mr. Ko argues that by "[b]eing allowed to live in the comfort of [his] own home and to be away for work or other approved activities," he was not subject to a "quantum of restraint" necessary for "custody." Aplee. Br. 19. However comfortable Mr. Ko may have found the arrangement, the BOP did not intend it to be anything less than an extension of his imprisonment.[2] In Mr. Ko's case, imprisonment entailed constant monitoring, a monitoring bracelet, and spatial and temporal bounds. In that way, the restrictions on his life in home confinement were sufficiently limiting so as to constitute custody under § 751. So long as a prisoner is confined to serve a term of imprisonment at a place designated by the BOP, he is in "custody" and liable for escape.

REVERSED.

---

[2] "Home detention is defined as a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office or other monitoring authority." 5 C.F.R. § 570.20.