**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CURTIS FARLEY,

Defendant - Appellant.

No. 21-4032
(D.C. No. 2:08-CR-00560-TC-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BRISCOE**, and **PHILLIPS**, Circuit Judges.
_____

Defendant-Appellant Curtis Farley appeals the United States District Court for

the District of Utah's imposition of a one-year and one-day term of imprisonment for

violations of supervised release. Farley asserts that, under the Supreme Court's

decision in *Tapia v. United States*, 564 U.S. 319 (2011), the district court erred when

it imposed a custodial sentence based, in part, on his rehabilitative needs. We

disagree. The district court's custodial sentence reflected its concern that releasing

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Farley to homelessness would endanger the community; the district court only considered rehabilitation in the context of Farley's supervised release. Accordingly, exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

I. **Background**

This case arises from Farley's repeated violations of his supervised release, imposed in case number 08-CR-560. In 2009, Farley was sentenced to a 120-month term of imprisonment, followed by a 300-month term of supervised release, for possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *See* ROA, Vol. I at 14, 20. In June 2017, Farley began his first term of supervised release. During this time, Farley was homeless. Over the course of the following year, Farley violated his supervised release on multiple occasions. In January 2018 and again in July 2018, Farley possessed sexually explicit materials and unauthorized internet devices. And in April 2018, Farley committed a new crime by failing to register as a sex offender. Farley's failure to register gave rise to a second criminal case against him—18-CR-34. In February 2019, Farley's supervised release in 08-CR-560 was revoked and he was sentenced to an 18-month term of imprisonment. Suppl. ROA at 8. That sentence was to run concurrently with another 18-month term of imprisonment imposed in 18-CR-34. *Id.*; *see also* Aple. Suppl. Mot., Att. B at 2.

In August 2019, Farley began a second term of supervised release. This time, Farley was released to a halfway house. Farley violated his supervised release at least twice during his time at the halfway house. In December 2019, he possessed sexually explicit materials and an unauthorized internet device. And in February

2

2020, Farley had unapproved contact with an individual under 18 years of age. In April 2020, Farley's placement at the halfway house ended and he was released as homeless. During this second period of homelessness, Farley stopped receiving sex-offender treatment. And in May 2020, Farley again violated his supervised release by possessing sexually explicit materials and an unauthorized internet device. In February 2021, Farley admitted guilt to six violations of his supervised release and the district court imposed a term of imprisonment of "12 months plus one day with credit for all time served in federal custody." ROA, Vol. I at 32.

At Farley's revocation hearing, all parties agreed that the advisory guidelines range was "six to 12 months." ROA, Vol. II at 18. At the beginning of the hearing, the district court indicated that it was "thinking of imposing a sentence of 12 months, and then making sure that Mr. Farley can be perhaps at the Residential Treatment Center, and from there he can be released to do work, doctors' appointments, et cetera . . . ." *Id.* Farley's counsel responded that "[t]he problem here is Mr. Farley's lack of residence and basically he is going to be homeless right now . . . ." *Id.* Farley's counsel also stated that a previous district court "was of the opinion that [it] was ready to release Mr. Farley if [Farley and his counsel] could find a suitable residence." *Id.* at 18–19. At the time of the revocation hearing no such residence could yet be identified.

The parties also discussed the possibility of placing Farley at a halfway house. Farley's counsel acknowledged that "[i]f the halfway house were available tomorrow . . . that would be a good option." *Id.* at 20. The government also indicated hope

that, if Farley were released to a halfway house in the Salt Lake City area, there would be "a lot more resources and opportunity for [Farley] to prove himself as far as making progress in treatment . . . ." *Id.* at 23. The government maintained that immediate release was inappropriate, however, in light of "the nature of the conviction" and Farley's post-release conduct. *Id.* at 21. Probation agreed with the parties that "it would be beneficial for [Farley] to go to the halfway house." *Id.* at 24. Probation cautioned, however, that it could not "guarantee that [Farley] will get bed space at the halfway house due to COVID-19," *id.*, and that the halfway house was "looking at July, August before any bed space is perceived to be available." *Id.* at 25. In response, the district court inquired whether "if [it] were to place Mr. Farley in custody for a year, minus any time he has already served . . . that might allow him a better chance at getting into the halfway house." *Id.* at 25–26. Probation agreed with the district court's assessment.

In response, Farley's counsel repeated that "fashioning a sentence at 12 months . . . to allow for halfway house placement is not appropriate." *Id.* at 26. Counsel also stated that "[t]o impose the high-end guideline range in this case sort of for rehabilitative purposes I think misses the mark and I would ask the Court not to do that." *Id.* at 27.

The district court informed Farley: "I want you to get somewhere . . . where you are warm[1] and where you are off the streets and where you don't run so much

---

[1] We again note here that Farley was sentenced in Utah in February.

4

risk of COVID. I don't think the [homeless] shelter is a good place for you." *Id.* at 28. In imposing a 12-month term of imprisonment, the district court explained:

> Well, I have thought about all the information that I have read and that I have seen, and considering the thoughts of [the previous district court], I am going to place you in custody, Mr. Farley, for 12 months with credit for all time served. I want to get you off the streets and I want to keep you warm and I want to make sure that the public is protected.

*Id.* at 29.

Farley filed a timely notice of appeal.

## II. The Government's Motion to Supplement the Record

On appeal, the government filed a motion to supplement the record with documents filed in (1) 08-CR-560, the supervised release at issue in this appeal; and (2) 18-CR-34, a separate case arising from Farley's failure to register as a sex offender. Farley objected only to the documents related to 18-CR-34, because "[d]ocuments from an unrelated case do not address, even tangentially," whether the district court committed a *Tapia* error. Aplt. Resp. Mot. Suppl. at 2.

Federal Rule of Appellate Procedure 10(e)(2) states that "[i]f anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded[.]" Rule 10(e) "allows a party to supplement the record on appeal but does not grant a license to build a new record." *United States v. Kennedy*, 225 F.3d 1187, 1191 (10th Cir. 2000) (internal quotations omitted). Thus, we generally deny motions to supplement the record where the supplemental material was not available to or considered by the district court. *See, e.g., Allen v. Minnstar,*

5

*Inc.*, 8 F.3d 1470, 1475 (10th Cir. 1993) (denying motion to supplement the record with "[p]ortions of [an expert witness's] deposition not filed below or presented to the district court").

We grant the government's motion. Notably, the district courts in both 08-CR-560 and 18-CR-34 imposed concurrent 18-month terms of imprisonment, with each judgment referencing the other. *See* Suppl. ROA at 8; Aple. Suppl. Mot. Att. B at 2. The violation report produced for the revocation at issue in this appeal also stated that "[i]n relation to [Farley's] previous violation, he was convicted of Failure to Register as a Sex Offender and sentenced to 18 months custody followed by no term of supervised release." ROA, Vol. III at 26. Further, even if Farley's two cases were not expressly intertwined, the documents from 18-CR-34 were available to the district court at the time of the revocation hearing in 08-CR-560. Farley does not dispute that the district court could have considered the supplemental documents as a practical matter. Farley's objection that the supplemental documents are not relevant to our *Tapia* analysis is a merits question—not an objection to the record itself. Thus, we have no concern that granting the government's motion would improperly "grant a license to build a new record." *Kennedy*, 225 F.3d at 1191.[2]

---

[2] We also note that, even if the government's motion were improper under Rule 10(e), we may still exercise our discretion to take judicial notice of the documents filed in 18-CR-34. *See United States v. Castellanos-Barba*, 648 F.3d 1130, 1133 (10th Cir. 2011) ("[W]e have the authority to take judicial notice of 'publicly filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.'") (quoting *United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007)).

6

## III.    The District Court Did Not Abuse Its Discretion

The parties dispute whether Farley preserved his *Tapia* objection, and thus whether we should review for abuse of discretion or plain-error. We need not address the preservation issues in this case because, even accepting Farley's preservation arguments, the district court did not abuse its discretion. We agree with Farley that it appears the district court imposed a sentence designed to facilitate his placement at a halfway house and to avoid his homelessness. We disagree, however, that such placement was motivated, even in part, by rehabilitative goals. Rather, the record shows that the district court was concerned that the alternative—releasing Farley to homelessness—posed a danger to both Farley and the community.

"[W]e review sentences for reasonableness under a deferential abuse-of-discretion standard." *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008). A district court abuses its discretion when it procedurally errs "in calculating or explaining the sentence." *Id.* In calculating a term of imprisonment, Congress has instructed courts to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a); *see also* 28 U.S.C. § 994(k) (instructing the Sentencing Commission to ensure "that the [Sentencing] guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment"). Thus, in *Tapia*, the Supreme Court held that "[s]ection 3582(a) precludes sentencing courts from imposing or lengthening a prison term to

7

promote an offender's rehabilitation." 564 U.S. at 332. *Tapia* applies to terms of imprisonment imposed for violations of supervised release. *United States v. Mendiola*, 696 F.3d 1033, 1041–42 (10th Cir. 2012). *Tapia* does not apply, however, to non-custodial sentences, including "setting the terms of supervised release." *United States v. Naramor*, 726 F.3d 1160, 1170 (10th Cir. 2013) (quoting *United States v. Cordery*, 656 F.3d 1103, 1106 (10th Cir. 2011)).

In *United States v. Tidzump*, we reversed under *Tapia* because the district court imposed a 31-month term of imprisonment after finding 31 months was "probably the bottom number" that would allow the defendant to participate in the Bureau of Prison's Residential Drug Abuse Program ("RDAP"). 841 F.3d 844, 846 (10th Cir. 2016). We acknowledged that the district court "could not know for sure" whether the defendant would ultimately be eligible to participate in RDAP, and that the district court "acknowledged some uncertainty." *Id.* at 847. Nevertheless, we concluded that imposing a 31-month sentence left the defendant with "precisely the minimum [requirements] for entry into the RDAP" and such timing was not mere "coincidence." *Id.*

So too here. The district court asked probation whether imposing a 12-month sentence "might allow [Farley] a better chance at getting into the halfway house," which probation affirmed. ROA, Vol. II at 25–26. Even crediting the government's assertion that the district court could not "guarantee" Farley's placement in a halfway house, Aple. Br. at 29, such uncertainty does not foreclose a *Tapia* error. Further, the timing between the opening up of bed space at the halfway house and Farley's

8

expected release date is likely more than "coincidence." *Tidzump*, 841 F.3d at 847. Here, probation informed the district court that "the halfway house is looking at July, August before any bed space is perceived to be available," *id.* at 25, and Farley's 12-month sentence resulted in a projected release date of July 1. Aplt. Br. at 14 n.4. Thus, it seems likely, if not apparent, that the district court deliberately crafted a term of imprisonment to facilitate Farley's placement at a halfway house.

Yet, unlike *Tidzump*, Farley's sentence was not "likely the minimum to allow entry into the RDAP," 841 F.3d at 847, or any other rehabilitative program available during imprisonment. Rather, Farley's sentence was the minimum to prevent Farley's homelessness upon his release. Thus, Farley's *Tapia* objection fails for two reasons.

First, the record does not show the district court found that Farley's homelessness would impede his rehabilitation; rather, the district court only found that Farley's homelessness increased the risk of recidivism and the danger to the community. Throughout the hearing, the district court repeated its concerns that releasing Farley to homelessness would pose a danger to the community. *See, e.g.,* ROA, Vol. II at 21 ("Given the nature of his offense, Congress has made it very clear, and in my personal opinion it is too, that Mr. Farley poses a danger to the community and child pornography is particularly dangerous for the community. So I have got to be thinking about that as well."). The government also indicated that, in light of Farley's prior release violations, releasing Farley to homelessness would be "inappropriate" because Farley would not be able to fulfill his "obligations" to the

9

district court. *Id.* at 22; *see also id.* at 23 (requesting Farley be released to a halfway house "to be able to at least fulfill the obligations that he has to the court"). And Farley's counsel acknowledged that Farley "failed to comply [with the conditions of his supervised release] because he changed his residence . . . but he was homeless." *Id.* at 27.

For similar reasons, the district court did not commit a *Tapia* error by imposing a sentence to "get [Farley] off the streets and . . . to keep [him] warm and . . . to make sure that the public is protected." *Id.* at 29. To be sure, the parties discussed the obstacles to Farley's treatment if he were released to homelessness. Yet, as the Supreme Court cautioned in *Tapia* itself, a district court "commits no error by *discussing* the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." 564 U.S. at 334 (emphasis added). Here, in imposing its sentence, the district court only indicated that it considered Farley's homelessness in the context of "mak[ing] sure that the public is protected." ROA, Vol. II at 29. The district court's concern was reasonable in light of Farley's repeated violations, including those during periods of homelessness. Thus, the discussion of Farley's homelessness did not result in a *Tapia* error. *See United States v. Thornton*, 846 F.3d 1110, 1117 (10th Cir. 2017) ("*Tapia* does not bar discussion of the *consequences* of in-prison treatment on a possible aggravating factor (e.g., community safety) in denying a downward variance; instead, it only precludes

10

lengthening a prison sentence for the *purpose* of providing an offender with perceived rehabilitative benefits.") (emphasis in original).[3]

Second, even if Farley's sentence was deliberately crafted to ensure his access to treatment, doing so would not violate § 3582(a) or *Tapia* because his custodial sentence only facilitated *post-release* rehabilitation. Section 3582(a) requires district courts to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). *Tapia* and its progeny make clear this instruction is limited to "imprisonment." In *Tapia*, the Supreme Court explained that Congress did not intend imprisonment to be used as a means of rehabilitation because courts lack authority to order defendants to participate in "prison correctional programs." 564 U.S. at 331. Further, the legislative history indicates Congress's skepticism that "rehabilitation can be induced reliably in a prison setting." *Id.* at 331–32. Yet, the Supreme Court recognized a court's authority to order a defendant to treatment as a condition of probation or supervised release. *Id.* at 330. And the legislative history indicated that the "purpose of rehabilitation . . . is still important in determining whether a sanction *other than a*

---

[3] We recognize the closeness of distinguishing the district court's proper concerns regarding community safety and recidivism with an improper consideration of rehabilitation. As one of our colleagues has previously noted, "whether one views the problem as a need for rehabilitation or a need to protect against recidivism may well depend only on the lens one is looking through." *United States v. Story*, 635 F.3d 1241, 1249 (10th Cir. 2011) (Hartz, J., concurring); *see also id.* ("If no rehabilitation program is available, the judge may think that a longer sentence is appropriate to protect the public."). Suffice to say, in this case, we are confident that the district court did not apply an inappropriate "lens."

*term of imprisonment* is appropriate in a particular case." *Id.* at 332 (emphasis in original) (internal quotation omitted). Accordingly, courts remain free to "pursue the goal of rehabilitation in sentencing . . . in setting the terms of supervised release. *Naramor*, 726 F.3d at 1170 (quoting *Cordery*, 656 F.3d at 1106).

Here, nothing in the district court's colloquy indicates that it viewed imprisonment itself, as opposed to post-release residency at a halfway house, as promoting Farley's rehabilitation. Unlike other cases where we have identified *Tapia* errors, the treatment program at issue here was not a prison program. *See, e.g., Thornton*, 846 F.3d at 1114–15 (*Tapia* error committed where district court found the defendant "need[ed] enough time in prison to get treatment and vocational benefits"); *Tidzump*, 841 F.3d at 847 (*Tapia* error committed where custodial sentence facilitated eligibility for RDAP). The district court did not indicate that the inherent nature of imprisonment would further Farley's "penitence and spiritual renewal." *Tapia*, 564 U.S. at 332. Nor did the district court indicate that imprisonment itself would "restor[e] [Farley] to [his] useful and constructive place in society." Aplt. Reply Br. at 8 n.3. Accordingly, the district court adhered to Congress's instruction to "not think *about prison* as a way to rehabilitate an offender." *Tapia*, 564 U.S. at 330 (emphasis added). The district court only thought about post-release supervision as a way of rehabilitating Farley, and how to best implement the terms of such supervision. Doing so was consistent with § 3582(a) and *Tapia*.

Farley asserts that his "term of imprisonment" includes post-release residency at a halfway house. Aplt. Reply Br. at 13. Farley's assertion is without merit.

12

Farley's time at a halfway house would only occur after his release. *See* ROA, Vol. I at 35 (ordering residence at a halfway house as a special condition of supervised release). The cases Farley cites in his Reply Brief are inapposite. In *United States v. Ko*, we recognized that "BOP has the authority to 'designate the place of the prisoner's imprisonment,'" including a halfway house. 739 F.3d 558, 561 (10th Cir. 2014) (quoting 18 U.S.C. § 3621(b)). But it does not follow, as Farley asserts, that living at a halfway house is always a "term of imprisonment." Indeed, in this case, Farley would only reside at a halfway house *after* serving his term of imprisonment; thus, his residency at the halfway house and his term of imprisonment are mutually exclusive. And in *United States v. Sack*, we only addressed whether a person residing at a halfway house is "in custody." 379 F.3d 1177, 1179 (10th Cir. 2004). We did not address whether such residency is a "term of imprisonment."

In short, Farley appeared before the district court for violations of his supervised release following a period of homelessness. A prior district court indicated that imprisonment might not be necessary, but only if Farley established a stable housing situation. Farley failed to do so. Accordingly, a subsequent district court, considering the prior district court's views, determined that releasing Farley to homelessness would endanger both Farley and the community. The district court considered Farley's rehabilitation only in the context of his supervised release *after* serving his term of imprisonment.

Accordingly, we AFFIRM the district court's sentence. We GRANT the government's motion to supplement the record. We DENY Farley's motion to expedite as moot.

Entered for the Court


Mary Beck Briscoe
Circuit Judge