**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CARLOS VASQUEZ,

    Defendant - Appellant.

No. 17-2189
(D.C. No. 1:16-CR-02700-JCH-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **EID**, **BALDOCK**, and **EBEL**, Circuit Judges.
_____

Appellant Carlos Vasquez appeals the reasonableness of his sentence. We find

that Vasquez has not shown that the district court's below-Guidelines sentence was

arbitrary or capricious. Accordingly, we affirm Vasquez's sentence and the district

court judgment.

**I.**

The district court adopted the following factual findings in the presentence

investigation report (Report). IV ROA 35. Vasquez told a confidential informant

(CI) that he would sell methamphetamine for $500 an ounce. III ROA 4, ¶ 6. The CI

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

reported this information to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). *Id.* The ATF identified Vasquez in a law enforcement database. *Id.* An undercover agent (UC) and the CI went to Vasquez's apartment to purchase two ounces of methamphetamine. *Id.* at ¶ 7. Vasquez told them that the methamphetamine was on its way to his apartment. *Id.* In the meantime, he displayed a sample of methamphetamine and heroin and indicated that the heroin cost $900 an ounce. *Id.* The UC asked if Vasquez could obtain firearms, and Vasquez proceeded to show the UC photos of different firearms for sale. *Id.* Vasquez told the UC that he had access to "big man" quantities of narcotics. I ROA 45.

The methamphetamine delivery never came, so the UC and CI left Vasquez's apartment. III ROA 4, ¶ 7. They all exchanged cell phone numbers before they left and agreed to meet on another date. *Id.* On that same day, the CI returned to Vasquez's apartment and purchased 0.1 grams of methamphetamine for $40. *Id.* at 5, ¶ 8. The CI turned over the methamphetamine to the ATF. *Id.*

A few days later, Vasquez and the UC agreed to meet. *Id.* at ¶ 9. Vasquez said that the price for methamphetamine was now $490 per ounce and the sale price for a certain firearm was $250. *Id.* The parties met and the UC bought the firearm. *Id.* at ¶ 10. Vasquez told the UC that he would soon have methamphetamine available for purchase at $450 an ounce. *Id.* Vasquez also indicated that he had a source for cocaine for $36,000 per kilogram. *Id.*

Vasquez was arrested and charged with distribution of methamphetamine (Count 2) and being a felon in possession of a firearm (Count 3). III ROA 4, ¶ 1. He

2

pled guilty to both counts without a plea agreement. *Id.* at ¶¶ 2–3; IV ROA 2. The Report concluded that Vasquez was a career offender under § 4B1.1 of the Guidelines. III ROA 4; *see* United States Sentencing Commission, Guidelines Manual § 4B1.1 (Nov. 2016) (Guidelines). A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the offense of conviction; (2) the offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. Guidelines § 4B1.1(a). The probation officer determined that Vasquez qualified as a career offender because his offense of conviction involved distribution of methamphetamine and he had two prior crime-of-violence felony convictions: domestic violence and conspiracy to commit armed robbery. III ROA 5, ¶ 14.

Vasquez's base offense level for the felon-in-possession charge was 24. *Id.* at 6–7, ¶ 20. However, because he was labeled a "career offender," his offense level rose to 32. *Id.* at 7, ¶ 26. Vasquez then received a three-level reduction for accepting responsibility and for timely entering a guilty plea, producing a total offense level of 29. *Id.* at ¶¶ 27–29. Considered in conjunction with Vasquez's criminal history category of VI (the highest category), the Guidelines range was 151 to 188 months' imprisonment. *Id.* at 17, ¶ 74. At the guilty plea hearing, the court acknowledged that the Guidelines are just advisory. IV ROA 14. The court asked Vasquez if he understood that he could be sentenced "all the way up to the maximum statutory penalties." *Id.* at 16. Vasquez answered "yes," *id.*, and pled guilty. *Id.* at 20–24.

3

Vasquez objected to his career offender enhancement. III ROA 47. He argued

that the predicate domestic violence conviction did not qualify as a "crime of

violence" under the Guidelines because the offense does not qualify under the

Guidelines' elements or enumerated clause. *Id.* In response, the probation office

explained that Vasquez's charged domestic violence offense—"Aggravated Battery

Against a Household Member"—contains as an element "aggravated battery," *i.e.*,

force sufficient to "inflict[] great bodily harm." *Id.* at 48. Thus, the probation office

reasoned, Vasquez's domestic violence felony conviction met the elements clause of

§ 4B1.1.

At the sentencing hearing, the court overruled Vasquez's objection and,

consistent with the Report, held that his domestic violence conviction qualified as a

"crime of violence" under the Guidelines.[1] IV ROA 35. Vasquez's attorney then

asked the court to discount the probative value of that conviction because it was

"constitutionally infirm." *Id.* at 40–41. Counsel argued that Vasquez's brother, the

victim of the assault, allegedly told law enforcement that he was not injured and that

he did not want his brother to be prosecuted. *Id.* at 40. Vasquez argued that the

prosecution had violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding

from defense counsel the victim's alleged statements that he was uninjured and did

not want to see the case prosecuted. *Id.* at 40–41. To this end, Vasquez introduced a

2017 memorandum from a private investigator. I ROA 69. The investigator

---

[1] Vasquez does not challenge this aspect of the district court's decision on appeal.

4

apparently spoke to Vasquez's brother, Hugo, the victim in the 2008 domestic violence conviction. *Id.* The investigator reported that Hugo "could not remember much" but he did not "recall any injuries" and he "did not want to press charges." *Id.* The prosecutor allegedly did not disclose this information to Vasquez, and Vasquez's lawyer for the domestic violence charge apparently did not discover the brother's alleged statements through independent research. *Id.* at 45–46.

Counsel then argued that Vasquez's Guidelines range was artificially high. In light of the fact that Vasquez sold 0.1 grams of methamphetamine, counsel argued, punishing Vasquez like any other career offender was unreasonable. IV ROA 41–42. Counsel requested a substantial downward variance of 41 months' imprisonment. *Id.* at 45. In rejoinder, the government pointed out that Vasquez had five prior criminal convictions relating to "some type of assault or violence." *Id.* at 48. The government also explained that "64.7 percent of career offenders receive a sentence greater than ten years." *Id.* at 50. Additionally, defendants who receive lower sentences "provide substantial assistance" to the government, which Vasquez had not done. *Id.* at 51.

The court acknowledged that this case was "a little bit unusual." *Id.* at 56. The court commented that Vasquez "sounds like someone who had every expectation of selling more drugs than he actually did." *Id.* He seemed to have "wanted to be more involved than he was able to be" so he "ended up selling a small amount of drugs that apparently he took from his roommate . . . and then also sold a gun." *Id.* The court also noted that Vasquez's criminal history is "severe" and "extensive." *Id.* at 56–57. Turning to defense counsel's contention that Vasquez's domestic violence

5

conviction was legally suspect, the court explained that it lacked the power to "go back and undo" the conviction "at this point based on the record that's before me." *Id.* at 58. The court added that the conviction "seems to be pretty consistent with the history that I see aside from that incident." *Id.*

The court calculated the Guidelines range as between 151 to 188 months, "considered the [18 U.S.C. § 3553] factors," and sentenced Vasquez to 120 months' imprisonment—a 31-month downward variance. *Id.* at 59–60. The court explained that Vasquez lacked "immediate access to the drugs or the weapons" so a downward variance was appropriate. *Id.* at 61. The court next sentenced Vasquez to a concurrent, 30-month sentence for being a felon in possession of a firearm. *Id.* Vasquez appeals, arguing that his sentence was substantively unreasonable.

## II.

## A.

This court reviews the substantive reasonableness of a sentence for an abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). A district court abuses its discretion when it imposes a sentence that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quotations omitted).

A below-Guidelines sentence is "presumptively reasonable against an attack by a defendant claiming that the sentence is too high." *See United States v. Balbin-Mesa*, 643 F.3d 783, 788 (10th Cir. 2011) (quoting *United States v. Liddell*, 543 F.3d 877, 885 (7th Cir. 2008)). "A sentence is substantively unreasonable if 'the length of

6

[the] sentence was excessive given all the circumstances of the case in light of the factors set forth in [18 U.S.C.] § 3553(a).'" *United States v. Naramor*, 726 F.3d 1160, 1171 (10th Cir. 2013) (brackets original) (quoting *United States v. Gantt*, 679 F.3d 1240, 1249 (10th Cir. 2012)). The § 3553(a) factors require the court to fashion a sentence that will, among other things, reflect "(1) the nature and circumstances of the offense and the history and characteristics of the defendant," "(2)(A) promote respect for the law" and "provide just punishment for the offense," "(2)(B) afford adequate deterrence to criminal conduct," and "(2)(C) protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a). "The district court has a wide range of discretion in striking a balance among the 18 U.S.C. § 3553(a) factors." *United States v. Gambino–Zavala*, 539 F.3d 1221, 1232 (10th Cir. 2008).

In this case, the district court sentenced Vasquez to a prison term far below the Guidelines range, and therefore the presumption that his below-Guidelines sentence is reasonable applies. Vasquez does not appeal the application of the career-offender enhancement to his sentence. Rather, he argues that his sentence is substantively unreasonable because the court (1) inadequately weighed the nature of his offenses; (2) inadequately considered the disparity between his sentence and those of similarly situated defendants; and (3) imposed a sentence that was greater than necessary to accomplish the sentencing goals of § 3553(a).

**B.**

We begin our analysis with the nature of Vasquez's offense—the distribution of a controlled substance. Vasquez told the district court that he was only feigning

7

access to "big man" amounts of narcotics; in reality, he was just a "braggart and a wannabe." I ROA 90. At sentencing, the district court never found that Vasquez in fact lacked access to large quantities of narcotics, only that Vasquez "had every expectation of selling more drugs than he actually did." IV ROA 56. On appeal, Vasquez insists that he was only "marginally" involved in drug trafficking. Aplt. Br. 14. Vasquez concludes that the district court overestimated the seriousness of his offense. *See id.*

The district court acknowledged that Vasquez's case was "a bit unusual." IV ROA 56. On one hand, Vasquez sold a small quantity of methamphetamine; on the other, Vasquez displayed an intricate knowledge of the fluctuating street price of methamphetamine, cocaine, and heroin. While the small amount of methamphetamine Vasquez sold is relevant to calculating the appropriate sentence, so are his statements reflecting a much broader involvement in the drug trade. We cannot say that the district court erred in taking those statements into account.

Further, while Vasquez devotes much of his argument to minimizing the seriousness of his offense, he does not adequately address the other half of § 3553(a)(1), which instructs the court to consider the defendant's "history and characteristics." Vasquez does not appeal the district court's decision to apply the career-offender enhancement or its determination that Vasquez has a category VI criminal history. Rather, he claims that full-fledged application of the enhancement is unreasonable because his predicate domestic violence conviction is constitutionally infirm. Aplt. Br. 5.

8

Vasquez, however, marshals little evidence to support this claim. He merely repeats the assertions made at the sentencing hearing that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding from defense counsel the victim's alleged statements that he was uninjured and did not want to see the case prosecuted. Vasquez's only evidence that the prosecution might have violated *Brady* is a 2017 memorandum from a private investigator. The investigator apparently spoke to Vasquez's brother, Hugo, the victim in the 2008 domestic violence conviction. The investigator reported that Hugo "could not remember much" but he did not "recall any injuries" and he "did not want to press charges." I ROA 69. Those claims are not sworn testimony and have no indicia of reliability. Nor do the brother's statements made in 2017 establish that the prosecutor failed to disclose evidence available in 2008.

Without such evidence, this court is bound to apply a "presumption of regularity" to final judgments by state courts. *See Parke v. Raley*, 506 U.S. 20, 29 (1992); *see also Voorhees v. Jackson*, 35 U.S. (10 Pet.) 449 (1836) (holding, in the context of an ejectment action, that "[t]here is no principle of law better settled, than that every act of a court of competent jurisdiction shall be presumed to have been rightly done, till the contrary appears"; cited in *Parke*). "Once the prosecution establishes the existence of a conviction, the defendant must prove by a preponderance of the evidence that the conviction was constitutionally infirm." *United States v. Windle*, 74 F.3d 997, 1001 (10th Cir. 1996). Accordingly, the

9

district court did not err by refusing Vasquez's request to give the domestic violence conviction little weight.

Like the district court, we are left with (1) Vasquez's involvement in the drug trade evidenced by the sale of a small amount of methamphetamine and bolstered by statements of far more; and (2) a domestic violence conviction that is covered by the presumption of regularity. Given the district court's broad discretion, we cannot say that the district court erred in its consideration of the nature of the offense. Accordingly, we find no merit in Vasquez's first argument.

## C.

Next, we consider Vasquez's argument concerning alleged sentence disparity. Section 3553(a)(6) instructs the district court to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). That provision requires a baseline of federal "defendants with similar records" who engaged in "similar conduct." *Id.* The baseline is assessed not by comparing the sentences of codefendants, but all similarly-situated federal defendants "nationwide." *See United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006).

Vasquez presented no evidence that his 120-month sentence is an outlier among other defendants with category VI criminal history coupled with the career-offender enhancement. A 2016 report published by the U.S. Sentencing Commission found that defendants sentenced as career offenders because of both drug and crime-of-violence convictions were, on average, sentenced to 145 months' imprisonment.

10

*See* U.S. Sentencing Comm'n, *Report to the Congress: Career Offender Sentencing Enhancements* 34 (Aug. 2016).  It is difficult to conclude, then, that Vasquez's 120-month sentence—a sentence that was 25 months lower than the national average—was an abuse of discretion.

Vasquez proposes other measures of sentence disparity, none of which withstands scrutiny.  First, he compares his sentence to those of the other defendants arrested during the same ATF investigation in terms of days incarcerated over dollars of narcotics sold.  By this measure, Vasquez received 91.25 days in prison for every dollar of drugs that he sold, whereas the next highest defendant received 2.2 days in prison for every dollar of drugs sold.[2]  *See* I ROA 96 (depicting the alleged discrepancy).

Vasquez's days-in-prison-per-dollar measure depends on a false equivalence, both in the numerator and the denominator.  The numerator comparison (days in prison) is flawed because Vasquez's sentence was increased by his "extensive" and "severe" criminal history, IV ROA 56–57, as well as by his career offender enhancement.  The denominator comparison (dollars of drugs sold) is flawed because it assumes that the other defendants matched Vasquez's price-per-ounce and that the price for methamphetamine stays constant whether purchased in wholesale or retail quantities.  It is flawed, then, to measure Vasquez's sentence in dollars and compare that sentence against those given to other targets of the ATF investigations.

---

[2] The only evidence we have of this is counsel's own assertions concerning the 19 sentences and the underlying drug quantities sold.

11

Vasquez also argues that the career offender enhancement increased his sentence "more than threefold the average increase." Aplt. Br. 16. He asserts that the average career offender receives a 7 offense-level increase whereas he received a 19 offense-level increase. *Id.* at 15–16. That discrepancy, however, is the natural result of an offense enhancement that prescribes an absolute offense level and is not pegged to the severity of the underlying sentence. As Vasquez's own data show, the average career offender's Guidelines range without § 4B1.1 is 70–87 months' imprisonment; Vasquez's was 15–21 months' imprisonment. *Id.* at 16. The career offender enhancement has an especially pronounced effect on Vasquez not because the court below erred but because he sold 0.1 grams of methamphetamine—enough to yield a small Guidelines imprisonment range but still sufficient to trigger § 4B1.1. The district court accounted for this reality and imposed a below-Guidelines sentence.

That sentence was not substantively unreasonable. Congress deliberately chose to require that career offenders be sentenced alike—*i.e.*, "at or near the maximum term," 28 U.S.C. § 994(h)—without regard to the severity or culpability of the most recent crime. A consequence of that choice is that comparably less culpable offenders like Vasquez are given relatively harsher sentences than they would receive under an add-X-levels-to-the-offense enhancement. To Vasquez, that is a problem; to Congress, it is a feature. The sentencing court's job was to give effect to the judgment of Congress. It did so. The resulting disparity caused by the career-offender enhancement was not a misapplication of § 3553(a).

12

**D.**

Finally, Vasquez contends that his sentence violated § 3553(a)'s parsimony provision because 120 months' imprisonment is "greater than necessary" to accomplish the aims of criminal punishment. *See* 18 U.S.C. § 3553(a). Specifically, he requests a shorter prison term followed by substance abuse and mental health treatment. The sentencing court reasonably accommodated Vasquez's substance abuse problem by recommending that he participate in the Bureau of Prison's "500-hour drug and alcohol treatment program" and by mandating as a special condition of release that Vasquez participate in an "outpatient substance abuse treatment program." IV ROA 61–62. Coupled with the downward variance, we cannot conclude that Vasquez's sentence was "greater than necessary." 18 U.S.C. § 3553(a).

**III.**

At best, Vasquez's arguments demonstrate that the district court reasonably could have been more lenient; they do not prove that Vasquez's actual sentence "was outside [the] range of reasonableness." *United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011) ("[The] Defendant must do more than show that his preferred sentence was a reasonable one. In virtually every case, many sentences would be reasonable."). Vasquez has not shown that the district court's below-Guidelines sentence was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Friedman*, 554 F.3d at 1307. We find that the district court did not abuse its

13

discretion and **AFFIRM**.

Entered for the Court

Allison H. Eid
Circuit Judge